**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO. 3:08CR168(RNC) |
| ANTHONY PAGE | : | March 19, 2019 |

## **MEMORANDUM IN SUPPORT OF FIRST STEP ACT MOTION**

Anthony Page respectfully submits this memorandum in support of his February 25, 2019 motion for immediate release or resentencing (ECF No. 172). On March 12, 2019, the U.S. Probation Office filed an addendum to Mr. Page's presentence report (ECF No. 173) ("PSR addendum"). Mr. Page submits this memorandum to reiterate his request for immediate release or resentencing, and to respond to the issues raised in the PSR addendum.

## **BACKGROUND**

On September 23, 2009, Mr. Page was found guilty by jury verdict as to one count of conspiracy to possess with intent to distribute and to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B); one count of conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C); one count of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and one count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (*See* ECF No. 114.) The government had previously filed a second offender notice pursuant to 21 U.S.C. § 851. (ECF No. 75.) At his sentencing, Mr. Page was also classified as a career offender. Mr. Page's career offender status and the § 851 notice were based on a previous Connecticut state conviction for possession of narcotics under Conn. Gen. Stat. § 21a-279(a), two previous New Jersey state convictions for third-degree possession with intent to distribute a dangerous substance under N.J. Stat.

Ann. § 2C:35-7, and one previous New Jersey state conviction for charges including second-degree possession with intent to distribute a controlled dangerous substance under N.J. Ann. Stat. § 2C:35-7.1. (*See* 2010 Presentence Report (ECF 173-2) ("PSR") ¶ 20.) As a result of the § 851 notice, he faced a mandatory minimum sentence of 10 years and a maximum sentence of life on the § 841(b)(1)(C) crack cocaine count. (*Id.* ¶ 70.) As a result of the career offender enhancement (in combination with the statutory maximum sentence of life), Mr. Page's Guidelines range was 360 months imprisonment to life imprisonment. (*Id.* ¶ 71.) On July 27, 2010, this Court sentenced Mr. Page to 210 months of imprisonment on each of the drug counts and 120 months of imprisonment on the firearm count, all to run concurrently, for a total effective sentence of 210 months. In other words, the Court varied downward from the bottom of the Guidelines range by 150 months, a departure proportion of .4167 (or 41.76%) (*i.e.*, 150 divided by 360). Mr. Page was also sentenced to 8 years of supervised release, which was the mandatory minimum term of supervised release after application of the § 851 notice.

On December 21, 2018, the president signed the First Step Act of 2018, PL 115-391, 132 Stat. 5194 (2018) ("the Act"). The Act addressed a number of issues related to criminal justice reform. At issue in this case is Section 404 of the Act, which addressed the application of the formerly passed Fair Sentencing Act of 2010. The Fair Sentencing Act reduced the disparities between the penalties for crack and powder cocaine. Section 404 of the First Step Act retroactively applied those reduced penalties to crack cocaine offenses committed before the Fair Sentencing Act came into force.

The Fair Sentencing Act was enacted because Congress recognized that the 1986 Anti-Drug Abuse Act's penalty scheme for crack cocaine offenses was far too harsh and had a disparate impact on African-American defendants. *See Kimbrough v. United States*, 552 U.S. 85, 97–99 (2007);

*Dorsey v. United States*, 567 U.S. 260, 268–69 (2012). Specifically, Section 2 of the Fair Sentencing Act changed the penalty structure for crack cocaine offenses, under both 21 U.S.C. § 841(b) and 21 U.S.C. § 960(b). Relevant to this case, the Fair Sentencing Act altered Section 841(b) as follows:

- Section 841(b)(1)(C) now provides for a sentencing range of up to 20 years if the offense involved less than 28 grams or an unspecified amount of crack cocaine;
- Section 841(b)(1)(B)(iii) now provides for a sentencing range of 5 to 40 years if the offense involved "28 grams or more" but less than 280 grams of crack cocaine; and
- Section 841(b)(1)(A)(iii) now provides for a sentencing range of 10 years to life if the offense involved "280 grams or more" of crack cocaine.

*See* 21 U.S.C. § 841(b); PL 111-220, 124 Stat. 2372.

On February 25, 2019, Mr. Page filed a motion for immediate release or resentencing pursuant to the First Step Act (ECF No. 172), relying on Section 404 of the Act. In the motion, Mr. Page argued that the Court should immediately release him or, in the alternative, schedule a resentencing hearing. If sentenced today, the statutory penalties for Mr. Page's crack cocaine offense would fall under 21 U.S.C. § 841(b)(1)(C), instead of § 841(b)(1)(B). Therefore, no mandatory minimum term of imprisonment would apply. As a result, the second offender notice would not apply to raise Mr. Page's mandatory minimum sentence of imprisonment, because he is no longer subject to any mandatory minimum term of imprisonment. In addition, under current law, the 851 notice would no longer apply because none of his prior convictions constitute "serious drug felonies." As a result, his term of supervised release would not be enhanced. Even if the career offender provision still applied today,

3

Mr. Page would face no mandatory minimum exposure, and he would face lower Guidelines.

On March 12, 2019, the U.S. Probation Office filed a PSR addendum in response to Mr. Page's First Step Act motion. The PSR addendum agrees that "Mr. Page committed a 'covered offense' under the meaning given that term in the First Step Act. Therefore, the probation officer believes the Act provides the Court with the authority to impose a reduced sentence on that count, but the Court is not required under the Act to do so." (ECF No. 173 at 3.) The PSR addendum also agrees that "[u]sing the drug quantity found by the jury as to [the crack cocaine count], had Section 2 of the Fair Sentencing Act of 2010 been in effect when Mr. Page was originally sentenced, the statutory penalties that would have applied would have been driven by 21 U.S.C. § 841(b)(1)(C), namely, a statutory maximum of 20 years' imprisonment (with no mandatory minimum) and 3 years to life supervised release." (*Id.*)

Should the Court decide to adopt the PSR addendum's Guidelines range of 262 to 327 months imprisonment, the Court should depart from that range in proportion to the departure from the original Guidelines range at Mr. Page's 2010 sentencing. At the 2010 sentencing, the Court started from a range of 360 months to life and varied downward to a sentence of 210 months, a departure proportion of .4167 (or 41.67%). In applying that downward variance, the Court stated the following as the basis:

> Application of the career offender guidelines applicable to the conviction on count two results in a sentence that is longer than necessary to serve the purposes of a criminal sentence under 18 U.S.C. § 3553. A sentence of 210 months in custody, which is considerably longer than the longest sentence previously received by the defendant, is sufficient to reflect the seriousness of his crimes, punish him, provide adequate deterrence and protect the public against further crimes by the defendant, in view of the defendant's age, family circumstances, lack of history of substance abuse, and the supervised release term of eight years that he will be required to serve following his release from the custody of the Bureau of Prisons.

(Statement of Reasons (ECF No. 173-6) at 3.)

4

Here, even if the Court were to adopt the PSR addendum's Guidelines calculation of 262–327 months imprisonment, it should vary downward by at least 41.67%, as it did in 2010. The reasons set forth in the Court's Statement of Reasons, namely the length of prior sentences, Mr. Page's age, family circumstances, and lack of history of substance abuse, still apply today, and application of the career offender Guidelines still results in a sentence that is much longer than necessary – even more so in the light of intervening changes to the federal crack cocaine sentencing laws. If the Court were to vary downward by the same proportion that it did in 2010, the result would yield a sentence of 156 months (.4167 * 267 = 111.2589, and then 267 - 111 = 156 months). With good time, a sentence of 156 months is equivalent to approximately 136 months. Mr. Page has already served 127 months, or approximately 10 ½ years, just nine months short of 136 months.

The PSR addendum also notes that "the Court will need to determine whether a resentencing under the Act is a plenary resentencing proceeding or a more limited resentencing." (ECF No. 173 at 3.) As explained in Section II below, the Act authorizes a plenary resentencing. The PSR addendum also asserts that the Court does not have the authority to impose reduced sentences on Mr. Page's other counts of conviction. (*Id.*) However, because Mr. Page is serving an aggregate sentence of 210 months, the Court can now impose a reduced sentence of time served, particularly in light of the fact that the conviction for crack cocaine drove the 2010 sentence. *See* Order Regarding Motion for Sentence Reduction Pursuant to the First Step Act, *United States v. Dennis Broadnax*, 3:06cr317(SRU), ECF No. 346 (D. Conn. Mar. 7, 2019) (reducing aggregate sentence of 240 months' imprisonment on multiple counts of conviction to time served in light of change to crack mandatory minimum).

5

Mr. Page reasserts his right to a full resentencing, including a resentencing hearing and the opportunity to submit additional legal and factual considerations in a sentencing memorandum prior to the resentencing hearing. Mr. Page would be willing to waive such rights only if the Court is willing to immediately impose a sentence of time served.

**ARGUMENT**

I. **Mr. Page is eligible for relief under the First Step Act.**

Section 404 of the First Step Act establishes its remedy in two steps, and it clearly applies to Mr. Page at each step.

First, the Act defines what offenses are covered by its remedy:

> Definition of Covered Offense: In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 404(a) (2018). Mr. Page's offense is a "covered offense" because Section 2 of the Fair Sentencing Act "modified" the "statutory penalties" under § 841(b) for "violation[s]" of 21 U.S.C. §§ 841(a) and 846, and he committed such offense before August 3, 2010.

Second, the Act provides the circumstances under which a district court may impose a reduced sentence for defendants who were previously sentenced for a "covered offense":

> Defendants Previously Sentenced: A court that imposed a sentence for a covered offense may, on motion of the defendant . . . , impose a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 404(b) (2018). This provision plainly applies to Mr. Page because this Court previously "imposed a sentence" on him "for a covered offense," and he is moving for imposition of a reduced sentence. Thus, this Court may now "impose

6

a reduced sentence" on Mr. Page as if the Fair Sentencing Act of 2010 were in effect.

The First Step Act provides only two narrow limitations on this resentencing power:

> No court shall entertain a motion made under this section to reduce a sentence [1] if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or [2] if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 404(c) (2018). Neither of these limitations apply to Mr. Page, because his sentence was not previously imposed or reduced in accordance with the Fair Sentencing Act of 2010, and he has not brought a prior First Step Act motion that was "denied after a complete review of the motion on the merits." Accordingly, Mr. Page is eligible for relief under the First Step Act.

## II. Section 404 of the First Step Act authorizes a plenary resentencing.

Because Mr. Page is eligible for relief under the First Step Act, this Court has the authority to impose a reduced sentence. The PSR addendum notes that the Act "does not describe the scope of any resentencing or sentence modification proceeding." (ECF No. 173 at 2.) As explained below, the Act authorizes a plenary resentencing, at which the Court must apply current law and consider all relevant factors, including § 3553(a) factors.

A. The First Step Act grants this Court the authority to resentence Mr. Page.

This Court's authority to resentence Mr. Page comes from the First Step Act itself, as contemplated by 18 U.S.C. § 3582(c)(1)(B). Section 3582(c) of Title 18 of the United States Code delineates three exceptions to the general rule that a "court may not modify a term of imprisonment once it has been imposed[.]" First, Section 3582(c)(1)(A) allows for "compassionate release" if specific criteria are met. Second, Section 3582(c)(1)(B) authorizes the Court to "modify an imposed

7

term of imprisonment *to the extent otherwise expressly permitted by statute* or by Rule 35 of the Federal Rules of Criminal Procedure" (emphasis added). Third, Section 3582(c)(2) states that when "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," the Court "may reduce the term of imprisonment, after considering the factors set forth in Section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

The first and third exceptions do not apply here. Instead, the Act plainly falls under § 3582(c)(1)(B), which allows the Court to modify a sentence when "expressly permitted by statute." Section 3582(c)(1)(B) was enacted as part of the Sentencing Reform Act of 1984, and states the obvious: "Subsection (c)(1)(B) simply notes the authority to modify a sentence if modification is permitted by statute." S. Rep. No. 98-225, at 121 (Aug. 4, 1983).

Section 3582(c)(1)(B) does not itself authorize modification of a sentence or impose any independent requirements; it does not authorize or restrict anything. *See, e.g.*, *United States v. Bailey*, 777 F.3d 904, 906–07 (7th Cir. 2015); *United States v. Graham*, 704 F.3d 1275, 1279 (10th Cir. 2013). This is in contrast to Section 3582(c)(2), which authorizes a court to "reduce" the term of imprisonment of a defined class of prisoners. In *Dillon v. United States*, 560 U.S. 817 (2010), the Supreme Court held that "[b]y its terms § 3582(c)(2) does not authorize a sentencing or resentencing proceeding. Instead, it provides for 'the modif[ication of] a term of imprisonment' by giving courts the power to 'reduce' an otherwise final sentence in circumstances specified by the Commission. . . . Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress

8

intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon*, 560 U.S. at 825–26.

Because Section 3582(c)(1)(B) merely acknowledges the fact that other possibilities for sentence reduction might be enacted in the future, it places no restrictions on what those possibilities might be or how they would work. Therefore, the breadth and depth of the authority given by the Act comes from the Act itself. The Act provides that, for prisoners sentenced under a "covered offense," the sentencing court "may, on motion of the defendant . . . impose a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Act at § 404(b). This authority to resentence pre-Fair Sentencing Act crack defendants is limited only in two fairly obvious ways. First, the Court shall not entertain a motion for resentencing under Section 2 or 3 of the Fair Sentencing Act if the defendant was already sentenced under Sections 2 and 3 of the Fair Sentencing Act. *Id.* at § 404(c). And second, the Court shall not entertain a motion made under Section 404 if a previous motion under Section 404 was, after the First Step Act was enacted, "denied after a complete review of the motion on the merits." *Id.*

Notably, Congress did *not* limit the Court's authority to resentence the defendant to only the "covered offense" that triggered the plenary resentencing. The statute does not say that the sentencing court may "impose a reduced sentence *on only the covered offense*," as it might have. Therefore, the Court has the authority to impose a new sentence, in accordance with current law, on Mr. Page's aggregate sentence.

At Mr. Page's 2010 sentencing, all four counts were grouped for purposes of determining a Guidelines sentence. For that reason, the statutory maximum of life for Mr. Page's crack cocaine count under Section 841(b)(1)(B), as considered by the career offender Guidelines, drove the high

9

Guidelines range at his original sentencing. In particular, at the time of Mr. Page's sentencing, the offense statutory maximum under Section 841(b)(1)(B) with a second offender enhancement was life imprisonment. 21 U.S.C. § 841(b)(1)(B) (effective Apr. 15, 2009 until Aug. 2, 2010). This statutory maximum mandated an offense level of 37 under the career offender Guidelines. U.S.S.G. § 4B1.1(b). A hypothetical illustrates that the 210 months that the Court imposed on Mr. Page's heroin counts was entirely driven by the since-rejected crack cocaine laws. Had Mr. Page been convicted of the heroin counts, but not the cocaine count, his offense statutory maximum under Section 841(b)(1)(C) with a second offender enhancement would have been 30 years, which in turn would have established an offense level of 34 (instead of 37) under the career offender Guidelines. In this scenario, instead of facing a Guidelines range of 360 months to life, Mr. Page would have faced a Guidelines range of 262–327 months imprisonment. As set out above, this is the same Guidelines range that the U.S. Probation Office believes applies today to Mr. Page's crack conviction. (*See* ECF No. 173 at 4.)

In fact, at the time of Mr. Page's original sentencing, the Court recognized that Mr. Page's high Guidelines range was driven by the career offender guidelines as applied to his crack cocaine offense (Count Two of the Superseding Indictment), in varying downward from that range: "Application of the career offender guidelines applicable to the conviction on count two results in a sentence that is longer than necessary to serve the purposes of a criminal sentence under 18 U.S.C. § 3553." (*See* Statement of Reasons (ECF No. 173-6) at 3.) Because the sentence that the Court imposed on Mr. Page's Section 841(b)(1)(C) heroin counts was a function of the unjust crack cocaine

laws that the First Step Act was designed to remedy[1], the Court should exercise its authority and discretion to resentence Mr. Page on all counts of conviction.

B. <u>The Act authorizes a plenary resentencing, by its plain language and under applicable principles of statutory construction.</u>

The "starting point in statutory interpretation is the statute's plain meaning," *see United States v. Piervinanzi*, 23 F.3d 670, 677 (2d Cir. 1994), and the plain meaning of a statute refers to "the ordinary, common-sense meaning of the words." *Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir. 1992). Section 404(b) of the Act authorizes the Court to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." The words "in effect at the time the covered offense was committed" link the Court's current sentencing analysis directly to the original plenary sentencing proceeding carried out "at the time the covered offense was committed." The plain language of the Act literally instructs the Court to impose a sentence as if the Act was in effect at the time the offense was committed. If Sections 2 and 3 had been in effect at the time of the original sentencing, the changed mandatory minimums and guidelines would have been applied within the context of a standard plenary sentencing. They would not have been applied as an additional measure after the regular sentencing had concluded. The language in

---

[1] *See, e.g.*, Press Release, Office of U.S. Sen. Corey Booker (co-author of First Step Act and chief sponsor in the U.S. Senate), Booker Statement on First Prisoner Released Due to First Step Act Reforms (Jan. 4, 2019), https://www.booker.senate.gov/?p=press_release&id=879 ("The sentencing provisions in the final bill include . . . making retroactive a 2010 law that reduced the egregious sentencing disparities between crack and powder cocaine – disparities that overwhelmingly and disproportionately affect African-Americans."); Press Release, Office of U.S. Rep. Hakeem Jeffries (co-author of First Step Act and chief sponsor in the U.S. House of Representatives), Collins-Jeffries Historic Criminal Justice Reform Bill Signed Into Law (Dec. 21, 2018), https://jeffries.house.gov/media-center/press-releases/collins-jeffries-historic-criminal-justice-reform-bill-signed-into-law ("[The Act] also provides retroactive relief for the shameful crack cocaine sentencing disparity that unfairly destroyed lives, families and communities.").

11

Section 404(c) requiring a "complete review of the motion on the merits" provides further support for a resentencing proceeding that is broad in scope.

Most importantly, the use of the word "impose" means to hand down a sentence following a plenary sentencing (or resentencing) hearing; its meaning is distinct from "reduce" or "modify." Imposition of a sentence requires consideration of all relevant factors, including the current guidelines, current law, the history and characteristics of the defendant, and the purposes of sentencing. At least two principles of statutory construction confirm this conclusion.

First, "language used in one portion of a statute should be deemed to have the same meaning as the same language used elsewhere in the statute." *United States v. Daugerdas*, 892 F.3d 545, 556 (2d Cir. 2018) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260 (1993) (internal quotations omitted)). The word "impose" is used twice in Section 404(b). The first reference to "impose" refers unambiguously to the original plenary sentencing that occurred at the time the offense was committed. It follows logically that the second time the word "impose" is used in the same subsection of the same statute, it also refers to a plenary sentencing. As explained more fully below, if Congress had wanted to produce a different result, it could have used a different word, in order to distinguish the original, plenary sentencing from the proceeding to occur under the Act. For example, it could have used the term "reduce" or "modify." But, it did not choose to do so. Instead, it chose to use congruent language, thus, reflecting Congress's intent to harken back to the original full sentencing proceeding.

Second, and by extension, language used in one statute should be deemed to have the same meaning as language used in another statute but in the same context, because "a legislative body generally uses a particular word with a consistent meaning in a given context." *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972). This is known as the rule of *in pari materia. See also Tanvir*

12

*v. Tanzin*, 894 F.3d 449, 463 (2d Cir. 2018) (applying "the venerable canon of construction that Congress is presumed to legislate with familiarity of the legal backdrop of its legislation") (internal citation and quotation marks omitted). The fact that the word "impose" is used throughout other statutes, including 18 U.S.C. § 3582 and elsewhere, to refer to plenary sentencings, suggests that it should refer to a plenary resentencing under the Act as well. By contrast, when Congress has intended for sentences to be adjusted based upon amendments to the Guidelines, for example, it has instead used the words "modify" or "reduce." Here, Congress's choice of the verb "impose" instead of "modify" or "reduce," is significant. Federal sentencing statutes use the verb "impose" to mean "sentence" in light of all relevant factors. *See, e.g.*, 18 U.S.C. § 3553(a) ("The court shall *impose* a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."); § 3553(a)(2) (directing courts to consider "the need for the sentence *imposed*" in light of the purposes of sentencing); § 3553(c) ("Statement of Reasons for *Imposing* a Sentence. The court, at the time of sentencing, shall state in open court the reasons for its *imposition* of the particular sentence"); § 3661 ("No limitation may be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of *imposing* an appropriate sentence) (emphases added). By contrast, where a statute clearly refers to some more limited procedure, as in §§ 3582(c)(1)(A) and 3582(c)(2), Congress uses the word "reduce."

Looking beyond the statutory text, the practical application of the Act necessitates the remedy of plenary resentencing. When a defendant is eligible for relief, the Act leaves it to the Court to decide as a matter of discretion whether to impose a lower sentence. In cases where the parties do not agree about the appropriate outcome, the discretionary nature of the Act requires the Court to make a

13

determination about what the appropriate sentence should be. The Court can only make that determination after consideration of all of the relevant Section 3553(a) factors, which can, in turn only be done after defense counsel presents evidence and arguments in support of a lower sentence, and the defendant speaks directly to the Court, about, *e.g.*, his growth in prison and goals for the future. The government, of course, could also present arguments or evidence opposing a reduction, or in support of a more limited reduction. Without this opportunity, the Court would not be able to conduct the required "complete review . . . on the merits" and make a reasoned, informed decision about whether to exercise its discretion.

  C. <u>Upon resentencing, the Court must apply current law.</u>

A plenary resentencing under the Act must obey the general rule that a defendant should be sentenced under the law in effect at the time of sentencing, even upon resentencing. *See United States v. Greer*, 285 F.3d 158, 180–81 (2d Cir. 2002). In *Greer*, the Court held that a resentencing after remand must take into account new case law, specifically *Apprendi v. New Jersey*, 530 U.S. 466, (2000) and *United States v. Thomas*, 274 F.3d 655 (2d Cir. 2001). *Greer* also cited *United States v. Grimes*, 142 F.3d 1342, 1351 (11th Cir. 1998) ("The general rule is that a defendant should be sentenced under the law in effect at the time of sentencing."). *See also Pepper v. United States*, 562 U.S. 476 (2011) (the Guidelines "sentencing framework applies both at a defendant's initial sentencing and at any subsequent resentencing after a sentence has been set aside on appeal."). In addition to *Apprendi*, relevant developments include the law relating to the Armed Career Criminal Act, the definition and application of career offender status, as well as *Mathis v. United States*, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016) and *Descamps v. United States*, 570 U.S. 254 (2013), all of which will apply at any resentencing.

14

In alignment with this general rule, Section 3553(a)(4) states that the Guidelines "in effect on the date the defendant is sentenced" apply, except as provided in Section 3742(g)(1), which covers resentencing after remand from an appeal, which is not the case here. *See* 18 U.S.C. § 3553(a)(4)(A)(ii). The only exception to Section 3553(a)(4)(A) other than § 3742(g)(1) is the Ex Post Facto Clause of the U.S. Constitution. *See Peugh v. United States*, 569 U.S. 530, 537–38 (2013). Because neither exception applies to the imposition of a reduced sentence pursuant to Section 404, the Court must apply the law and Guidelines in effect now to Mr. Page's resentencing. "[A] court's duty is always to sentence the defendant as he stands before the court on the day of sentencing." *United States v. Bryson*, 229 F.3d 425, 426 (2d Cir. 2000) (*per curiam*) (quoted in *Pepper*, 562 U.S. at 492). *See also* U.S.S.G. § 1B1.11 ("The court shall use the Guidelines Manual in effect on the date the defendant is sentenced").

### III. Although a plenary resentencing is authorized, it is not necessary in this case if the Court finds that immediate release is warranted.

Under current law, Mr. Page faces no mandatory minimum sentence of imprisonment and his Guidelines range would be significantly lower than the 360 months to life he faced in 2010. Even under the U.S. Probation Office's calculation of the Guidelines, a downward variance to time served would be appropriate. Mr. Page hopes that the parties and the Court can agree to the imposition of a sentence of time served which would allow his immediate release. If the Court is prepared to impose a sentence of time served, Mr. Page is willing to waive his right to a full resentencing. Otherwise, it will be necessary to have a full airing of the merits of what any new sentence should be.

Only if the Court has a full resentencing hearing may this Court properly consider post-offense conduct, among other Section 3553 factors. *Pepper*, 562 U.S. 476. If a resentencing hearing and

15

briefing schedule are calendared, Mr. Page will more fully advise the Court of his post-offense conduct.

**IV.     The term of supervised release should be reduced from 8 to 3 years.**

Mr. Page was originally sentenced to 8 years of supervised release, the minimum possible term under Section 841(b)(1)(B) with a second offender notice. In its PSR addendum, the U.S. Probation Office suggests lowering the supervised release term to 6 years, the minimum possible term under Section 841(b)(1)(C) with a prior offender notice. Because the § 851 enhancement no longer applies to Mr. Page, the minimum term of supervised release applicable to him is 3 years. Therefore, any new sentence imposed should include a term of supervised release of 3 years only.

**CONCLUSION**

For the reasons explained above, Mr. Page requests that the Court order his immediate release and impose a shorter term of supervised release, or, in the alternative, schedule his case for a resentencing hearing.

Respectfully submitted,

THE DEFENDANT,
Anthony Page

OFFICE OF THE FEDERAL DEFENDER

Dated: March 19, 2019          /s/ Carly Levenson
Carly Levenson
Assistant Federal Defender
265 Church Street, Suite 702
New Haven, CT 06510
Bar No. phv09665
Phone: 203-498-4200
Fax: 203-498-4207
Email: Carly_Levenson@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 19, 2019, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

 /s/ Carly Levenson
Carly Levenson