**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| vs. | : CRIMINAL NO. 3:08CR168 (RNC) |
| ANTHONY PAGE | : April 16, 2019 |

## REPLY IN FURTHER SUPPORT OF FIRST STEP ACT MOTION

Mr. Anthony Page respectfully submits this reply in further support of his February 25, 2019 motion for immediate release or resentencing under the First Step Act of 2018 (ECF No. 172) and its memorandum in support (ECF No. 175), for the limited purpose of addressing certain points in the government's April 12, 2019 response (ECF No. 178) ("Gov't Resp."). In limiting his reply to these points, Mr. Page does not waive any argument previously raised.

The government argues (1) that Mr. Page is not eligible for relief under the First Step Act because, based on the quantity of cocaine base found by the Court at sentencing by a preponderance of the evidence, and (2) that even if Mr. Page is eligible for relief, the Court should refuse to exercise its discretion to grant such relief. We respectfully disagree. For the reasons explained below, Mr. Page is eligible for relief under the First Step Act. He is also precisely the type of person whom the First Step Act was intended to benefit. Accordingly, the Court should exercise its discretion to order his immediate release from custody and to lower his term of supervised release.

### I. An uncharged, judge-found drug quantity cannot bar relief under the First Step Act.

Mr. Page is eligible for relief under the plain language of the First Step Act because he was convicted of a covered offense. The First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 404(a) (2018).

Mr. Page was found guilty by a jury of conspiracy to distribute, and to possess with intent to distribute, 5 grams or more of cocaine base. This is a covered offense because the statutory penalties for an offense involving 5 grams or more of cocaine base were modified by section 2 of the Fair Sentencing Act; specifically, under section 2 of the Fair Sentencing Act, a conviction for 5 grams or more of cocaine base would fall under 21 U.S.C. § 841(b)(1)(C), subjecting Mr. Page to a statutory penalty range of 0 to 20 years on that count of conviction (before application of the § 851 notice).

Nonetheless, the government asks the Court to use the uncharged drug quantity of 62.35 grams of cocaine base adopted by the Court at *sentencing* to determine Mr. Page's statutory penalty range under the Fair Sentencing Act (and thus his eligibility for relief under the First Step Act). Based on the quantity found at sentencing, the government contends, Mr. Page's statutory penalty range on the crack cocaine count would still be 5 to 40 years imprisonment (before application of the § 851 notice) under 21 U.S.C. § 841(b)(1)(B), and so Mr. Page is not eligible for relief. *See* Gov't Resp. at 6. The government is wrong, both as a matter of constitutional law and statutory interpretation.

The Supreme Court has long held that "facts that expose a defendant to a punishment greater than that otherwise legally prescribed [are] by definition 'elements' of a separate legal offense," and "must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 483 n.10, 490 (2000). "The essential point is that the aggravating fact produced a higher range, which, in turn, conclusively indicates that the fact is an element of a distinct and aggravated crime. It must, therefore, be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 115–16 (2013). *See also Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016) ("This Court has held that only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction."); *Burrage v. United States*, 571 U.S. 204,

2

210 & n.3 (2014) (applying the rule to facts that increase the penalty range for an offense under 21 U.S.C. § 841(a)(1)).

Mr. Page was not charged with an offense involving 62.35 grams of crack cocaine, and the jury did not find that he committed an offense involving that quantity. As a growing number of district courts around the country have held, *see infra* at 7–8, "the drug type and quantity used to set the statutory range under the First Step Act of 2018 is the quantity charged in the indictment and found by a jury beyond a reasonable doubt." *United States v. Powell*, No. 5:02-CR-206, 2019 WL 1198005, at *4 (N.D.N.Y. Mar. 14, 2019); *see also, e.g.*, *United States v. Martin*, No. 03-cr-795, 2019 WL 1558817 (E.D.N.Y. April 10, 2019) (holding that defendant was eligible for relief under First Step Act even though he stipulated to an amount of 1.5 kilograms of cocaine base and agreed to be sentenced on that amount, because "'it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act'" (quoting *United States v. Davis*, No. 07-cr-245, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019))). Mr. Page was not convicted of an offense that has a post-Fair Sentencing Age statutory range of 5 to 40 years. He was convicted of the 5-gram-or-more quantity, which is a "covered offense" under the First Step Act.[1]

The government incorrectly contends that the *Apprendi* and *Alleyne* decisions "do not – and should not – apply" under Section 404 to determine Mr. Page's statutory range under the Fair

---

[1] In support of its argument, the government cites two Second Circuit cases that have no relevance here. *See* Gov't Resp. at 5 n.4 (citing *United States v. Rios*, 765 F.3d 133, 138-40 (2d Cir. 2014), and *United States v. Johnson*, 633 F.3d 116, 117–18 (2d Cir. 2011)). *Rios* and *Johnson* concern motions for relief under 18 U.S.C. § 3582(c)(2), based on Guidelines amendments. Those cases have nothing to do with Section 404 or statutory penalties. Mr. Page is not challenging the use of a judge-found quantity for purposes of calculating his Guidelines; he is challenging the use of that quantity for purposes of determining the applicable statutory penalties and his eligibility for relief under Section 404. *See United States v. Couch*, No. 0:08-cr-60236-WPD (S.D. Fla. Feb. 26, 2019), ECF No. 42 ("Relevant conduct may be relevant for scoring sentencing guidelines; it is not relevant in charging crimes in an indictment and the resulting statutory maximum sentences.").

Sentencing Act because "[t]he original sentences were lawful at the time they were imposed." *See* Gov't Resp. at 9. The courts' former practice of using uncharged judge-found facts to determine statutory ranges was always unconstitutional. It did not just *become* unconstitutional when those cases were decided. When the Supreme Court announces a new rule of constitutional law, whether the Court declares that rule to apply retroactively or not, it does not "imply[] that the right at issue was not in existence prior to the date the 'new rule' was announced." *Danforth v. Minnesota*, 552 U.S. 264, 271 (2008). Rather, "the source of a 'new rule' is the Constitution itself, not any judicial power to create new rules of law." *Id.* "Accordingly, the underlying right necessarily pre-exists [the Supreme Court's] articulation of the new rule." *Id.*

The government also errs in asserting that *Apprendi* and *Alleyne* do not apply because they have been held not to be retroactive "on collateral review." *See* Gov't Resp. at 10. Mr. Page is not seeking relief on collateral review. He is seeking relief under Section 404 of the First Step Act, a new statutory remedy that Congress expressly made retroactive. *See* Sec. 404(b) (court may impose a reduced sentence "as if" the Fair Sentencing Act "were in effect at the time the covered offense was committed"). While courts have held that the *Apprendi* rule is not retroactive "on collateral review" because it is procedural rather than substantive within the meaning of *Teague*, that distinction has no bearing on the relief sought under Section 404. *Danforth*, 552 U.S. at 271 (referencing *Teague v. Lane*, 489 U.S. 288, 301 (1989)). Instead, the *Apprendi* rule applies because "the source of [the rule] is the Constitution itself" and "the underlying right necessarily pre-exist[ed] [the Supreme Court's] articulation of the new rule." *Id. See also United States v. Dodd,* -- F. Supp. 3d. --, No. 3:03-CR-00018-3, 2019 WL 1529516, at *2 (S.D. Iowa Apr. 9, 2019) (imposing a reduced sentence under the First Step Act where defendant's relevant conduct involved 1.5 kilograms of cocaine base, and holding that "[b]oth *Apprendi* and *Alleyne* are binding on this Court for sentencings held today. That

4

these procedural rules do not trigger a right to relief retroactively on collateral review, . . . is distinct from whether they apply to proceedings independently authorized under the First Step Act.")

It is inconceivable that when Congress enacted Section 404, well after *Apprendi*, *Alleyne*, and *Burrage* were decided, it intended, without saying so, that courts would use an unconstitutional practice it had never sanctioned to implement the new statute. Indeed, Congress is presumed to legislate in the light of constitutional requirements. *See, e.g.*, *Rust v. Sullivan*, 500 U.S. 173, 191 (1991) ("[W]e assume [Congress] legislates in the light of constitutional limitations."); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("Congress, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that Congress intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it.").

The government further argues that using judge-found facts "at this time does not offend *Apprendi* or *Alleyne*, as it does not involve any *increase* in a sentence based on judge-found facts." Gov't Resp. at 10. But that is obviously wrong. Mr. Page's statutory range under the Fair Sentencing Act, based on the elements charged in the indictment to which he pled guilty, is 0 to 20 years (before application of the § 851 notice). The government urges the Court to increase that range based on facts found by a judge by a preponderance of the evidence.

Rather than rely on the indictment or jury verdict, the government would have the Court "determine from the record the quantity involved in the offense," which according to the government "may be derived from a specific finding of the district court at sentencing (either during the hearing or in the statement of reasons), from a plea agreement, from the uncontested finding of a presentence report, and from a trial record." *Id.* at 10–11. Yet in the same breath in which it asks the Court to plumb the depths of the docket for a drug quantity determination, the government also claims that

"[t]he First Step Act only directs the Court to consider reducing a sentence, *not to engage in collateral review* of a previously imposed sentence." *Id.* at 10 (emphasis added).

The government repeatedly emphasizes the fact that Mr. Page did not object to the quantity finding at the time of sentencing, *see id.* at 2, 6, 11, but this focus is misguided. Before the passage of the Fair Sentencing Act, Mr. Page had no reason to object to the quantity finding, given that it did not affect his statutory penalty range, nor did it affect his Guidelines, which were dictated by his career offender status and the then-applicable statutory maximum penalty.

Whether or not the government could or would have charged Mr. Page under Section 841(b)(1)(B) after the Fair Sentencing Act is not relevant to determining his eligibility for relief. Rather, "[i]n determining whether a defendant is eligible for relief under § 404 of the First Step Act, the sentencing court should look to whether the offense of conviction was modified by the Fair Sentencing Act of 2010 to determine eligibility; it should refrain from delving into the particulars of the record to determine how this specific defendant committed his or her offense of conviction, and how those facts would have hypothetically affected the charges brought against the defendant under the new statutory regime." *United States v. Pierre*, Cr. No. 07-003 WES, 2019 WL 1495123, at *5 (D.R.I. Apr. 5, 2019); *id.* ("The Government's approach . . . effectively requires the Court to employ a prosecutor-friendly 'way-back machine' to conjure how the charge, plea, and sentencing would have looked had the Fair Sentencing Act of 2010 been in effect."); *Dodd*, 2019 WL 1529516, at *3 ("Many things might have been different if this crime had been committed and charged years later or the Fair Sentencing Act had been passed years earlier, and the Court is unwilling to engage in a series of hypotheticals about what might have happened had aspects of the case been fundamentally altered"); Order Granting Def.'s Mot. for Reduction in Sentence at 10, *United States v. Davis*, No. 92-cr-4013 (N.D. Fla. Mar. 6, 2019), ECF No. 2245 (declining government's suggestion to look to

the evidence and "determine [from] the known quantity involved in the offense [whether] that Defendant would have received the same sentence if the Fair Sentencing Act had been in effect at the time of the original sentencing, and the Government had presented its case subject to the Fair Sentencing Act requirements.").

The government asks this Court to stand apart from a growing number of district courts both in the Second Circuit and across the country that have considered the question of which drug quantity controls a defendant's eligibility under Section 404 of the First Step Act. *See*, *e.g.*, *Pierre*, 2019 WL 1495123, at *5 (D.R.I. Apr. 5, 2019); *Dodd*, 2019 WL 1529516, at *2 (S.D. Iowa Apr. 9, 2019); *Martin*, 2019 WL 1558817, at *3 (E.D.N.Y. April 10, 2019); *Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019); *United States v. Pugh*, No. 5:95-cr-145, 2019 WL 1331684 (N.D. Ohio Mar. 25, 2019); *Powell*, 2019 WL 1198005, at *4 (N.D.N.Y. Mar. 14, 2019); *United States v. Glore*, No. 99-CR-82-PP, 2019 WL 1060838, at *5–6 (E.D. Wisc. Mar. 6, 2019); *Davis*, No. 92-cr-4013 (N.D. Fla. Mar. 6, 2019), ECF No. 2245; *United States v. Logan*, No. CR 07-20090-01-KHV, 2019 WL 498519, at *1 (D. Kan. Feb. 8, 2019); Final Judgment and Order, *United States v. Vance*, Case No. 0:08-cr-60071-WPD (S.D. Fla. Feb. 27, 2019), ECF No. 71; Final Judgment and Order at 2, *United States v. Couch*, No. 0:08-cr-60236-WPD (S.D. Fla. Feb. 26, 2019), ECF No. 42; *United States v. Laguerre*, No. 5:02-CR-30098-3, 2019 WL 861417, at *3 (W.D. Va. Feb. 22, 2019); *United States v. Delaney*, No. 6:08-CR-00012, 2019 WL 861418, at *2 (W.D. Va. Feb. 22, 2019); Order, *United States v. Allen*, No. 8:00-cr-378-T-26AAS (M.D. Fla. Feb. 19, 2019), ECF No. 66.

The government's position is contrary not only to the above district court rulings, but also represents a departure from its own stance of just a few weeks ago in two cases in this district, in which the records reflected drug quantities that exceeded the higher statutory threshold under the Fair Sentencing Act. In those cases, the government agreed that the defendants were eligible for relief under

the First Step Act and deferred to the Court's discretion as to the appropriate relief, if any. Both of those defendants were resentenced to time served and were immediately released. *See* Order Regarding Mot. for Sentence Reduction Pursuant to the First Step Act, *United States v. Deas*, 3:07-cr-73-SRU (D. Conn. Mar. 13, 2019), ECF No. 946 (imposing sentence of time served under First Step Act where attributable drug quantity in PSR was 1.431 kilograms of cocaine base); Order Regarding Mot. for Sentence Reduction Pursuant to the First Step Act, *United States v. Broadnax*, 3:06-cr-317-SRU (D. Conn. Mar. 7, 2019), ECF No. 346 (imposing sentence of time served under First Step Act where attributable drug quantity in PSR was 25 or more kilograms of cocaine base).

The government is, of course, free to urge the Court that it should not, in its discretion, impose a reduced sentence to the full extent permitted by Section 404. "But its argument that a defendant is not *eligible* because the sentencing court might have elected to calculate his statutory penalties in a way that now is unlawful, and back then would have been illogical, is unpersuasive." *Glore*, 2019 WL 1060838, at *5–6 (emphasis in original).

## II.     Section 404 of the First Step Act authorizes a full resentencing.

Section 404 of the First Step Act created an independent, freestanding remedy that authorizes the district court to impose a reduced sentence for a covered offense. By its own terms, the Act allows the court to impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act were in effect at the time the covered offense was committed. The only limitations imposed by the Act are not implicated in Mr. Page's case.[2] Therefore, the Court has the authority to impose a new sentence, in accordance with current law, in place of Mr. Page's sentence.

---

[2] Section 404 provides only two narrow limitations on the Court's authority to impose a reduced sentence. *See* Pub. L. No. 115-391, 132 Stat. 5194, § 404(c) (2018) (noting that "[n]o court shall entertain a motion made under this section to reduce a sentence" if (1) "the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010,"

In arguing that Section 404 does not authorize a plenary resentencing, the government relies on *Dillon v. United States*, 560 U.S. 817 (2010), an inapposite 18 U.S.C. § 3582(c)(2) case, and *United States v. Potts*, a recent decision from the Southern District of Florida. The cases cited by the *Potts* court on this issue were all cases related to Section 3582(c)(2) and are therefore inapplicable to the First Step Act. It is also worth noting that the defendant in *Potts* filed a motion for reconsideration following the court's decision. The motion for reconsideration has been briefed but not yet ruled upon; meanwhile, the court in *Potts* scheduled a resentencing hearing for April 26, 2019. *See* Notice Resetting Sentencing Hr'g as to Robert Clarence Potts, III, *United States v. Potts*, No. 2:98-CR-14010-RLR (S.D. Fla. Mar. 28, 2019), ECF No. 215. Although several district courts in other jurisdictions have held that Section 404 does not authorize a plenary resentencing, those decisions are not well-reasoned and the law on this question is far from settled.

The government attempts to liken Section 404 to 18 U.S.C. § 3582(c)(2), describing cases under the latter as being "in a similar context" to cases under the First Step Act, *see* Gov't Resp. at 5 n.4, but that analogy is seriously flawed. Section 3582(c)(2) permits courts to reduce a "term of imprisonment" based on a subsequently lowered guideline range, and only if such reduction is "consistent with" Commission policy statements. One such policy statement provides that "proceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing," and another requires courts to "substitute only" the guideline amendment and "leave all other guideline decisions unaffected." *See* U.S.S.G. § 1B1.10(a)(3), (b)(1). Because Section 3582(c)(2) requires courts to comply with the Commission's policy statements, the Supreme Court held in *Dillon*, 560 U.S. 817, that § 3582(c)(2) does not authorize a "resentencing proceeding."

---

or (2) "a previous motion made under [Section 404] was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.").

Section 3582(c)(2) permits courts to reduce a sentence only "in circumstances specified by the Commission," *id*. at 825, and also "constrain[s]" the courts' power through Commission "statements dictating 'by what amount' the sentence of a prisoner serving a term of imprisonment affected by the amendment 'may be reduced.'" *Id*. at 826. The court must follow §1B1.10's instructions in determining "eligibility," in what circumstances it may reduce a sentence, and "the extent of the reduction authorized." *Id*.

In contrast, Section 404 contains no reference to policy statements issued by the Sentencing Commission, and does not authorize the Commission to issue policy statements specifying in what circumstances or by what amount the court may impose a reduced sentence. *Compare* 28 U.S.C. § 994(u). To the contrary, Congress directed courts to conduct a "complete review on the merits." *See* First Step Act, § 404(c). The government claims that "the First Step Act contemplates a recalculation of a defendant's guidelines range under the Fair Sentencing Act and a possible sentencing reduction consistent therewith, if warranted." Gov't Resp. at 13. But this interpretation is inconsistent with the text of the Act itself, and with applicable law—Section 404 does not limit itself to a "recalculation of a defendant's guidelines range," nor would the new Guidelines range be mandatory even if it did.

The clear distinction between Section 404 and Section 3582(c)(2) was recently recognized by the District Court for the Southern District of Iowa in *Dodd*:

> [The government's argument rests on a misplaced equivalency with sentence reductions under 18 U.S.C. § 3582(c)(2), a narrow avenue limited by the U.S. Sentencing Commission through 28 U.S.C. §§ 994(o) and 994(u) and U.S. Sentencing Guidelines § 1B1.10. Such a reduction does not "impose a new sentence in the usual sense." *Dillon v. United States*, 560 U.S. 817, 827, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010). In contrast, section 404(b) of the First Step Act contains a broader grant of authority to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010" were in effect.

*Dodd*, 2019 WL 1529516, at *2.

The government also incorrectly contends that Rule 43(b)(4) applies to Section 404 proceedings. Gov't Resp. at 12. Rule 43(b)(4), entitled "Sentence Correction," provides that a defendant "need not be present" when "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." This exception to the defendant's required presentence at sentencing does *not* apply to statutes described by 18 U.S.C. § 3582(c)(1)(B). *See*, *e.g.*, *United States v. Brown*, 879 F.3d 1231, 1237-41 (11th Cir. 2018) (§ 2255); *United States v. Arrous*, 320 F.3d 355, 357-60 (2d Cir. 2003) (direct appeal); *United States v. Faulks*, 201 F.3d 208, 210-12 (3d Cir. 2000) (same); *United States v. Moree,* 928 F.2d 654, 655-56 (5th Cir. 1991) (same). It applies only to proceedings that are authorized by Section 3582(c) itself, that is, to "resentencing hearings conducted under" § 3582(c)(2) "as a result of retroactive changes to the Sentencing Guidelines by the United States Sentencing Commission," and § 3582(c)(1)(A) "as a result of a motion by the Bureau of Prisons to reduce a sentence based on 'extraordinary and compelling reasons.'" Fed. R. Crim. P. 43, Advisory Committee Note (1998). *See also Dodd*, 2019 WL 1529516, at *2 n.2 ("As section 404 of the First Step Act authorizes a reduction in sentence by its own terms, it would be effective even absent the existence of 18 U.S.C. § 3582(c)(1)(B) as complementary authority.").

Congress authorized courts to impose a reduced sentence "as if sections 2 and 3 of the Fair Sentencing Act of 2010 [] were in effect *at the time the covered offense was committed*." When Congress makes a law retroactive, it must specify to what event the law retrospectively applies. *See*, *e.g.*, *Landgraf v. USI Film Products*, 511 U.S. 244, 264 (1994). The italicized language makes Section 404 retroactive to past violations, namely those committed before August 3, 2010, *not* to past sentencing proceedings. Where a statute places no restriction on the factors a court may consider in imposing a reduced sentence, the court may consider all relevant § 3553(a) factors. *See*, *e.g.*, *Pepper v. United States*, 131 S. Ct. 1229, 1243, 1249 (2011) (post-sentencing developments, whether

favorable or unfavorable to the defendant, bear directly on the court's duty to impose a reduced sentence that is sufficient, but not greater than necessary to serve the purposes of sentencing). In *Pepper*, the Court found that there is no congressional policy to prohibit courts' consideration of post sentencing developments in any context, including at resentencing after reversal on appeal, or "resentencings that occur for [other] reasons," "e.g., when a sentence is set aside on collateral review." *Id*. at 1246.

The general rule is that a defendant should be sentenced under the law in effect at the time of sentencing. *See United States v. Greer*, 285 F.3d 158, 180–81 (2d Cir. 2002). In alignment with this general rule, Section 3553(a)(4) states that the guidelines "in effect on the date the defendant is sentenced" apply, except as provided in § 3742(g)(1). *See* 18 U.S.C. § 3553(a)(4)(A)(ii). The only exception to § 3553(a)(4) (A) other than § 3742(g)(1) is the *Ex Post Facto* Clause. *See Peugh v. United States,* 539 U.S. 530, 537-538 (2013). *See also Sewell v. United States,* 6986507, at *2 (M.D. Al. Nov. 28, 2016) (applying guidelines in effect on date of resentencing after grant of § 2255 motion as neither exception to § 3553(a)(4)(A)(ii) applies); *Ferrara v. United States,* 372 F. Supp. 2d 108, 113 (D. Mass. May 13, 2005) (When a judgement is vacated on collateral review, "resentencing is governed by the law as it now exists," including the Supreme Court's decision in *Booker,* and the "correct, present, Guidelines range."). Because neither exception applies to the imposition of a reduced sentence pursuant to Section 404, the Court must apply the law and guidelines that are in effect now.

Fundamentally, Congress gave the courts the power to impose a reduced sentence to correct a historical wrong.[3] It was a broad grant because Congress knew there would be complicated cases

---

[3] *See, e.g.*, Press Release, Office of U.S. Sen. Corey Booker (co-author of First Step Act and chief sponsor in the U.S. Senate), Booker Statement on First Prisoner Released Due to First Step Act Reforms (Jan. 4, 2019), https://www.booker.senate.gov/?p=press_release&id=879 ("The sentencing provisions in the

and wanted the courts to have discretion and flexibility to determine the appropriate remedy for defendants who were sentenced under laws that are now widely recognized as misguided, unjust, and racially motivated. The government's attempt to hem in the Court misses the point. Congress did not create a detailed, comprehensive system to implement their goal; rather, they handed a broad grant of authority to the courts. This statute is not some technical correction or conforming change to the law; it is an attempt to right many years of injustice.

III.    **The Court has the authority to impose a reduced sentence under the First Step Act, even though Mr. Page is serving concurrent sentences on multiple counts.**

The government argues that, even if Mr. Page's conviction on the crack cocaine count is a covered offense, his total effective sentence must remain intact because his other counts of conviction (specifically the heroin counts) are not covered offenses. To be clear, this issue is distinct from the issue of whether Section 404 authorizes a full resentencing, despite the government's conflation of the two issues. *See* Gov't Resp. at 7–8. But on this issue, too, the government is incorrect.

This Court has the authority under § 404(b) of the First Step Act to impose a reduced sentence on every count of conviction, an applicable mandatory minimum being the only limitation on the Court's authority. The operative language of § 404(b) states "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act

---

final bill include . . . making retroactive a 2010 law that reduced the egregious sentencing disparities between crack and powder cocaine – disparities that overwhelmingly and disproportionately affect African-Americans."); Press Release, Office of U.S. Rep. Hakeem Jeffries (co-author of First Step Act and chief sponsor in the U.S. House of Representatives), Collins-Jeffries Historic Criminal Justice Reform Bill Signed Into Law (Dec. 21, 2018), https://jeffries.house.gov/media-center/press-releases/collins-jeffries-historic-criminal-justice-reform-bill-signed-into-law ("[The Act] also provides retroactive relief for the shameful crack cocaine sentencing disparity that unfairly destroyed lives, families and communities."); *Executive Business Meeting of the S. Comm. on the Judiciary*, 115th Cong. (Feb. 15, 2018) (statement of Sen. Mike Lee, Member, S. Comm. on the Judiciary, and one of the bill's primary sponsors), https://www.judiciary.senate.gov/meetings/02/15/2018/executive-business-meeting ("I see no good reason why we shouldn't make available the protections of the Fair Sentencing Act that were adopted a few years ago. If this was ok for prospective cases, why shouldn't it be ok in cases for which people have already been sentenced? . . . I think most Americans would acknowledge [they] have been punished excessively.").

of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." The first clause of the sentence identifies which defendants can receive a reduced sentence: those sentenced for "a covered offense." The second clause of the sentence identifies the available remedy for covered defendants: the imposition of a reduced sentence "as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed."

Logically, in order to impose a reduced sentence as if the First Step Act applied at the time the covered offense was committed, as a starting point the Court would recalculate the sentencing guidelines on all counts using the new penalty structure of the First Step Act. The grouping rules of the Sentencing Guidelines purposely work to provide one overall sentence of imprisonment for all counts. As the introductory commentary to Part D of Chapter 3 explains, "This Part provides rules for determining a single offense level that encompasses all the counts of which the defendant is convicted." In other words, every count of conviction plays a part in determining a single, final offense level. This makes sense as the Supreme Court has noted that the relevant sentencing statutes, 18 U.S.C. §§ 3553, 3582, 3584, direct sentencing courts to consider the terms of imprisonment on each count of a multicount conviction when determining the length of the sentence for other counts. The Court explained the interaction of the statutes as follows:

> The [18 U.S.C.] § 3553(a) factors are used to set both the length of separate prison terms and an aggregate prison term comprising separate sentences for multiple counts of conviction. Under § 3582 a court, "in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a)." § 3582(a). And § 3584 provides: "[I]n determining whether the terms imposed are to be ordered to run concurrently or consecutively, [the court] shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." § 3584(b).
>
> As a general matter, the foregoing provisions permit a court imposing a sentence on one count of conviction to consider sentences imposed on other counts.

*Dean v. United States*, 137 S.Ct. 1170, 1175-76 (2017).

In reaching this holding, the Supreme Court rejected the government's argument that "district courts should calculate the appropriate term of imprisonment for each individual offense," without regard to "whatever sentences the defendant may also face on other counts." *Id*. at 1176. The Supreme Court not only found the government's argument wrong, it also noted the argument was "at odds with its own practice in 'sentencing package cases.'" *Id*. "Those cases typically involve multicount indictments and a successful attack by a defendant on some but not all of the counts of conviction. In those cases—including ones where § 924(c) convictions are invalidated—the Government routinely argues that an appellate court should vacate the entire sentence so that the district court may increase the sentences for any remaining counts up to the limit set by the original aggregate sentence. And appellate courts routinely agree. As we understand it, the Government's theory in those cases is that the district court may have relied on a now-vacated conviction when imposing sentences for the other counts." *Id*.

The practical realities of present sentencing practices require this approach. When a defendant is convicted of more than one count of a multicount indictment, the district court is likely to fashion a sentencing package in which sentences on individual counts are interdependent. When, on appeal, one or more counts of a multicount conviction are reversed and one or more counts are affirmed, the result is an "unbundled" sentencing package. *See, e.g.*, *United States v. Thomas*, 788 F.2d 1250, 1260 (7th Cir.), cert. denied, 479 U.S. 853 (1986). Because the sentences are interdependent, the reversal of convictions underlying some, but not all, of the sentences renders the sentencing package ineffective in carrying out the district court's sentencing intent as to any one of the sentences on the affirmed convictions. *United States v. Shue*, 825 F.2d 1111, 1114 (7th Cir. 1987).

Additionally, by statute "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment."

18 U.S.C. § 3584(c). This statutory rule further enforces the fact that a sentence of imprisonment is a singular sentence. Once the singular sentence of imprisonment is disturbed, all constituent parts of the sentence can be reconsidered.

Puzzlingly, the government cites four cases in support of its argument that the Court cannot impose a reduced sentence on Mr. Page's heroin counts, but none of the four cited cases even address this issue, much less rule on this issue in the government's favor. *See* Gov't Resp. at 8 (claiming that "numerous other Second Circuit district courts have consistently found that *only* 'covered offense[s]' are eligible for a sentence reduction."). First, the government completely misrepresents Judge Arterton's decision in *United States v. Hunter,* No. 3:05CR54 (JBA), 2019 WL 1220311, at *2 (D. Conn. Mar. 15, 2019). *Hunter* addressed only the issue of whether a conviction for a crack cocaine offense under § 841(b)(1)(C) is a covered offense under the First Step Act. In that case, the defendant was convicted of a single count. The question before the court was whether the statutory penalties for § 841(b)(1)(C) were modified by the Fair Sentencing Act of 2010, given that there was and still is no mandatory minimum penalty associated with § 841(b)(1)(C). In the three other cases cited by the government, those courts also did not address (and were not even presented with) the question of whether the Court could impose a reduced sentence on concurrent, non-crack counts of conviction. And in all of those three cases, in fact, the courts granted relief under the First Step Act by imposing a sentence of time served. *See* Gov't Resp. at 8 (citing *United States v. Davis*, No. 07-CR-245S, 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019); *United States v. Sampson*, No. 00-CR-6083L, 2019 WL 1141528 (W.D.N.Y. Mar. 13, 2019); *United States v. Powell*, 5:02-CR-206, 2019 WL 1198005 (N.D.N.Y. Mar. 14, 2019)).

The government also contends that it was "improper" for Mr. Page to point this Court to *United States v. Broadnax*, a recent First Step Act case in the District of Connecticut, for the

proposition that this Court has the authority to impose a reduced sentence despite Mr. Page's concurrent sentences on non-crack counts. *See* Gov't Resp. at 7–8. Mr. Page maintains that *Broadnax* is relevant here. Mr. Page agrees with the government that Chief Judge Underhill did not issue a written opinion in *Broadnax*. It is obvious from the record, however, that Chief Judge Underhill imposed a reduced sentence under the First Step Act, despite the fact that Mr. Broadnax was serving a sentence of 240 months for conspiracy to launder money (clearly not a "covered offense" under the First Step Act) concurrent to his 240-month sentence on a crack cocaine count. Mr. Page also agrees that the government did not oppose release in *Broadnax*. At the time of Mr. Broadnax's motion, the government was routinely deferring to the court's discretion in First Step Act cases. More recently, the government is routinely opposing relief in nearly all cases, apparently in response to guidance from the Department of Justice—a development which is extremely disappointing and disturbing, but perhaps should not be surprising given the other ways in which the Trump administration has simultaneously trumpeted the passage of the First Step Act while hindering it from having any real impact.[4]

### IV. The Court can and should impose a reduced sentence without the need for a full resentencing hearing.

Because Mr. Page was convicted of a covered offense, this Court can and should order his immediate release without the need for a full resentencing hearing. Mr. Page still maintains that Section 404 authorizes a full resentencing, for the reasons explained in his initial memorandum and in Section II above, but he would be willing to waive his right to a full resentencing if the Court is prepared to order his immediate release. Importantly, the Court can order Mr. Page's immediate

---

[4] *See, e.g.*, Samantha Michaels, *Trump Keeps Celebrating Prison Reform. His Administration's Latest Move Could Sabotage It*, Mother Jones, Apr. 11, 2019, https://www.motherjones.com/crime-justice/2019/04/trump-first-step-act-hudson-institute-risk-assessment-committee/.

release without reaching the disputed issue of whether the § 851 notice is still valid, because Mr. Page has already served more than the applicable mandatory minimum even with the § 851 notice.

The last section of the government's response is titled "[t]he Court should not exercise its discretion to reduce the defendant's sentence under the First Step Act." Gov't Resp. at 11. The content of that section, however, is focused primarily on the argument that Section 404 of the First Step Act does not authorize a plenary resentencing. But regardless of whether Section 404 authorizes a plenary resentencing, if Mr. Page was convicted of a covered offense, then the Court clearly has the authority under Section 404 to "impose a reduced sentence."

The government offers few reasons for why Mr. Page does not deserve a reduced sentence if the Court finds that he was convicted of a covered offense. The government argues that "imposing a sentence of time served would be inequitable and would undermine the sentencing goals of uniformity and proportionality, leading to divergent and unjustifiable sentences among similarly-situated offenders," Gov't Resp. at 18, and adds that "[t]he most notable disparity flowing from the defendant's request is that the defendant and other crack dealers originally sentenced before the Fair Sentencing Act of 2010 would be treated differently from every other crack dealer who was sentenced in all the years after the Fair Sentencing Act of 2010 was passed up to the enactment of the First Step Act." *Id.* The government has the matter exactly backwards. The entire purpose of the First Step Act is to give previous defendants the benefits of the Fair Sentencing Act that were enjoyed by those who came after them. It is bizarre to portray this act of overdue mercy as an injury to those who were sentenced more recently. Any person sentenced or resentenced for crack today would get the same procedures. *See* Order Appointing an Attorney and Setting Procedures For a Possible Sentence Reduction, *United States v. Balcom*, No. 4:02-cr-000-52-RH-CAS (N.D. Fla. Jan. 28, 2019), ECF No. 169 (concerning the need to avoid unwarranted sentencing disparities when resentencing a

defendant under the First Step Act, "[w]hile the issue may not be free of doubt, the better view is that in these circumstances a court may properly consider the anticipated *future* treatment of offenders who commit similar offenses and have the similar criminal histories") (emphasis added). Because federal sentencing law evolves and changes over time, disparities are inevitable between similarly situated defendants sentenced at different times, but not all disparities are automatically "unwarranted." Ultimately, some disparities are warranted because "a court's duty is always to sentence the defendant as he stands before the court on the day of sentencing." *United States v. Bryson*, 229 F.3d 425, 426 (2d Cir. 2000) (*per curiam*) (quoted in *Pepper v. United States*, 562 U.S. 476, 492 (2011)).

The government's contention that reducing Mr. Page's sentence would be "inequitable" overlooks "important principles of sentencing" that district courts across the country have supported. ECF No. 1479 at 10. *See United States v. Rader*, No. 1:04-cr-71, 2019 WL 1146815, at *2 (W.D. Va. Mar. 13, 2019) (reducing sentence under First Step Act despite "serious criminal history and a number of disciplinary violations in prison" given that defendant is "now 45 years old and his maturity may produce less risk of recidivism"); *United States v. Ussery*, No. 1:08-cr-59, 2019 WL 1052018, at *3 & n.4 (W.D.N.C. Mar. 5, 2019) (considering the defendant's conduct and completed programs while at BOP, as well as criminal history to "giv[e] the defendant the benefit of the doubt."); *United States v. Tucker*, No. 3-cr-246-02, 2019 WL 324423, at *2 (S.D. Iowa Jan. 23, 2019) (noting that "defendant turned fifty last year, an age at which the Sentencing Commission has found that recidivism rate begins to decline substantially" and rejecting Government's concerns because a sentence reduction is "in the interests of justice and furthers the purposes set forth in 18 U.S.C. 3553(a)" (citation omitted)).

The government also urges the Court to deny relief because "nothing has changed since then

that would warrant a lower sentence." Gov't Resp. at 18. In support of its contention that "nothing has changed," the government cites a grand total of five disciplinary infractions over the course of Mr. Page's eleven years in prison, the latest of which the government characterizes as "using martial arts boxing," but which the PSR addendum clarifies was "horse play" with a fellow inmate. *See* ECF No. 173 at 4. The government fails to mention that Mr. Page completed his GED in prison and has taken other self-improvement classes such as money management, typing, fatherhood, and parenting. If the government wants to make an argument that the current sentence is still the proper one in 2019, it can do so, but the proper place to debate the merits of a particular sentence, after a review of the 3553(a) factors, is a plenary resentencing.

In pointing to Mr. Page's disciplinary record, the government is trying to have it both ways. On the one hand, the government argues that the Court's role and authority under Section 404 is extremely limited and does not entail holding a hearing, weighing the various sentencing factors, or hearing from the defendant himself. On the other hand, the government instructs the Court to consider Mr. Page's disciplinary record to deny him relief. There is no principled reason why the Court should consider Mr. Page's record in BOP while disregarding all other sentencing factors. In order to fairly exercise its discretion, the Court must take into consideration not only Mr. Page's disciplinary record, but additional factors as well, including all of the § 3553(a) factors.

**CONCLUSION**

Mr. Page is an African-American man who was sentenced under harsh crack cocaine laws notorious for their disparate racial impact. He is now 41 years old, having served well over a decade (dating from his arrest on July 24, 2008) for a non-violent drug offense. Today, his Guidelines would be substantially lower than they were at the time of his sentencing. If the Court were to vary downward from the Guidelines by the same proportion that it did in 2010, the result would yield a sentence of

156 months. *See* ECF No. 175 at 5. With good time credit, a sentence of 156 months takes approximately 136 months to serve, though it is worth noting that under the First Step Act's good time provisions, which have not yet been implemented due to delay by the Attorney General, a sentence of 156 months should take 133 months to serve. Mr. Page has served approximately 129 months, or just 7 months short of 136 months (and 4 months short of 133 months). The Court should therefore exercise its discretion to order his immediate release, or at least to impose a reduced sentence of no more than 156 months. Mr. Page also requests that the Court impose a reduced supervised release term of 6 years, as recommended in Probation's addendum.

Mr. Page respectfully submits that the interests of justice weigh in favor of his immediate release from Bureau of Prisons custody and the imposition of a reduced supervised release term. The Court can and should grant such relief without holding a full resentencing hearing, and could even choose to do so on the briefing alone. *See, e.g.*, Order, ECF No. 61, *United States v. Telfus Durrant*, 3:06-cr-186-MPS-1 (April 15, 2019) (ordering defendant's immediate release after considering briefing, and scheduling hearing to consider whether to impose a reduced supervised release term). Accordingly, Mr. Page respectfully requests a ruling and/or a hearing at the Court's convenience.

Respectfully submitted,

THE DEFENDANT,
Anthony Page

OFFICE OF THE FEDERAL DEFENDER

Dated: April 16, 2019       /s/ Carly Levenson
Carly Levenson
Assistant Federal Defender
265 Church Street, Suite 702
New Haven, CT 06510
Bar No. phv09665
Phone: 203-498-4200
Fax: 203-498-4207
Email: Carly_Levenson@fd.org

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on April 16, 2019, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                         /s/ Carly Levenson
                         Carly Levenson