UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO. 3:08-CR-168 (RNC) |
| ANTHONY PAGE | : | March 31, 2020 |

## TIME-SENSITIVE SUPPLEMENT TO FIRST STEP ACT MOTION
## AND REQUEST FOR EXPEDITED RULING IN LIGHT OF COVID-19 CRISIS

Mr. Anthony Page, through undersigned counsel, respectfully submits this time-sensitive supplemental memorandum and request for an expedited ruling or hearing, in connection with his motion for immediate release under the First Step Act. Mr. Page's motion was filed on February 25, 2019, approximately 13 months ago. Doc. #172. His motion has been fully briefed since April 16, 2019. Mr. Page also filed notices of supplemental authority on July 19, July 29, August 21, September 20, October 10, and November 25, 2019, to inform the Court of relevant decisions in other First Step Act cases.

Mr. Page now files this supplemental memorandum to request that the Court review and rule on his First Step Act motion as soon as possible in light of the ongoing and escalating COVID-19 pandemic. He asks the Court to order his immediate release, given his eligibility for relief under Section 404 of the First Step Act; the § 3553(a) factors; his changed statutory range and Guidelines range; the 165 months (with good time credit) that he has already served; his strong release plan; and the grave risks to his health if he remains incarcerated during the pandemic. Mr. Page also attaches two letters to this memorandum, including his own letter to the Court (attached as Exhibit 1), as well as a letter from his close friend, Malissa Hurry, with whom he will live if released (attached as Exhibit 2).

## BACKGROUND

Mr. Page is serving a 210-month sentence for non-violent drug offenses. At the time of his sentencing, he was subject to a 10-year mandatory minimum sentence and a Guidelines range of 360 months to life. Today, under the Fair Sentencing Act and First Step Act, he would not be subject to any mandatory minimum sentence of imprisonment. His Guidelines range would be 262 to 327 months, after application of the § 851 notice and the career offender enhancement that applied at his original sentencing. If the Court were to depart downward from the Guidelines range by the same proportion that it did at his original sentencing, it would result in a sentence of approximately 156 months. *See* Doc. #175 at 5 (explaining calculations).

Notably, if the Court were to apply the one-to-one ratio between crack and powder cocaine, as is common in this District, Mr. Page's Guidelines range would be **57 to 71 months**[1] if not for the application of the career offender designation. The career offender designation massively inflates his Guidelines range, making it four and a half times as long. With respect to the career offender designation, except for one possession of narcotics conviction at age 28, for which he received no jail time, all of Mr. Page's prior convictions were incurred when he was age 22 or younger, and most were minor drug offenses from other states; none of his past convictions involved any violence.[2]

---

[1] According to the PSR, Mr. Page's offense involved 62.35 grams of crack and 2.14 grams of heroin. Using the current Drug Conversion Table in U.S.S.G. § 2D1.1, and applying the one-to-one ratio between crack and powder cocaine, 62.35 grams of cocaine equates to 1,2470 grams of converted drug weight. 2.14 grams of heroin equates to 2,140 grams of converted drug weight. The combined converted drug weight is therefore 14,610 grams, or 14.61 kilograms, of converted drug weight. 14.61 kilograms of converted drug weight corresponds to a base offense level of 14. Adding the same enhancements that applied at Mr. Page's original sentencing (two-point firearm enhancement and two-points leadership enhancement) would result in a total offense level of 18. An offense level 18 and Criminal History Category VI yields a Guidelines range of 57 to 71 months.

[2] *See* PSR at ¶¶ 34–39 (listing six prior convictions, all non-violent, from ages 17, 18, 18, 19, 22, and 28).

Today, Mr. Page is 42 years old. He has served 140 months in prison, which is the equivalent of approximately **165 months** with good time credit. Mr. Page is currently incarcerated at FCI Berlin in New Hampshire. Absent relief, he will serve approximately three and a half more years in prison.[3]

While incarcerated, Mr. Page has earned his GED and completed a variety of educational courses. *See* Doc. #173 at 4–5. Upon release, he will live with his close friend, Malissa Hurry, who is employed as a paralegal at the Connecticut Office of State Ethics and lives in Willimantic with her 9-year-old daughter. This is the same friend who is mentioned in the PSR, *see* PSR ¶ 61; she and Mr. Page have remained in "constant contact" throughout the years, and she is well-situated to help Mr. Page in the reentry process. *See* Exhibit 2.

### COVID-19 PANDEMIC

Over the last several weeks, the COVID-19 crisis has escalated, becoming a national and international emergency. On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[4] As of today, March 31, 2020, COVID-19 has sickened over 796,000 people, leading to at least 38,556 deaths worldwide.[5] The United States has become the epicenter of the pandemic, with 163,575 cases and 3,073 deaths thus far.[6]

On March 28, 2020, Patrick Jones became the first Bureau of Prisons (BOP) inmate to die from COVID-19. A court in the Western District of Texas had recently denied Mr. Jones's First Step Act motion. Mr. Jones contracted COVID-19 and died in custody after having served about 13 years

---

[3] The BOP inmate locator website (https://www.bop.gov/inmateloc/) lists Mr. Page's current release date as September 12, 2023.

[4] Press Release, World Health Organization, WHO Director-General's opening remarks at the media briefing on COVD-19 – 11 March 2020, (March 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[5] *Coronavirus Map: Tracking the Global Outbreak*, N.Y. TIMES (updated daily), https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html (last visited Mar. 31, 2020).

[6] *Id.*

of a 27-year sentence in a crack cocaine case. The number of cases within the BOP is escalating rapidly, with cases confirmed among inmates and staff at federal jails and prisons across the country. A recent article describes the rapid spread of COVID-19 at FCI Oakdale, where at least 60 inmates and an unknown number of staff were in quarantine as of last weekend.[7] The BOP currently reports 28 inmates and 24 staff across having tested positive as of March 30, 2020,[8] though the actual figures are likely much higher, given the unavailability of testing in many locations, and with news articles and lawsuits suggesting higher numbers at specific facilities.

Jails and prisons create the ideal environment for the transmission of contagious disease.[9] Inmates are confined in close proximity and the staff leave and return daily. Incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe." According to public health experts, "infection control is challenging in [correctional] settings."[10] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[11] In China, officials have confirmed the coronavirus spreading rapidly in Chinese prisons, counting 500 cases in

---

[7] *An explosion of coronavirus cases cripples a federal prison in Louisiana*, WASH. POST (Mar. 28, 2020), https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federal-prison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html#comments-wrapper. (Note: This article discusses Patrick Jones's death but incorrectly states that he was convicted in 2017, rather than 2007.)

[8] https://www.bop.gov/coronavirus/.

[9] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.

[10] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (Mar. 2, 2020), https://bit.ly/2W9V6oS.

[11] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020), https://bit.ly/2TNcNZY.

late February.[12] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[13] Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[14] It was reported on March 18 that a guard at Rikers Island in New York City had tested positive for COVID-19.[15] Three days later, at least 38 people at Rikers had tested positive.[16] Despite efforts to release hundreds of detainees to try to stem the tide of infection at Rikers,[17] the virus continues to spread rapidly there. As of March 30, 167 inmates, 114 correction staff, and 20 health workers at Rikers had tested positive and two correction staff members had died.[18] Hundreds of detainees have been released in other jurisdictions, including 600 in Los Angeles and 300 in San Francisco.[19]

The largescale release of detainees reflects the growing recognition that "[i]t's like an approaching tsunami. Once it hits, it's too late. . . . We should release as many as it's safe to release in order to avoid a situation like the one at Rikers."[20] "The coronavirus is invading U.S. jails and

---

[12] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.

[13] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://cnn.it/2W4OpV7.

[14] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* https://apnews.com/af98b0a38aaabedbcb059092db356697.

[15] *NYC Officials Call for Release of 'Most at Risk' on Rikers Island as More Test Positive for Virus*, NBC New York, The Associated Press (Mar. 18, 2020) at https://www.nbcnewyork.com/news/local/nyc-officials-call-for-release-of-most-at-risk-on-rikers-prison-as-more-test-positive-for-virus/2333348

[16] *38 Positive for Coronavirus at Rikers, NYC Jails* (March 21, 2020), *at* https://nyti.ms/33CzCmd

[17] https://nypost.com/2020/03/25/nyc-to-release-300-more-rikers-inmates-amid-coronavirus-pandemic/

[18] https://www.nytimes.com/2020/03/30/nyregion/coronavirus-new-york-update.html

[19] *38 Positive for Coronavirus at Rikers, NYC Jails* (March 21, 2020), *at* https://nyti.ms/33CzCmd

[20] *Id.*

prisons, prompting inmate releases, reduced bail requirements and other extraordinary measures as officials rush to avert a potentially disastrous spread of the virus among crowded inmate populations."[21] Two doctors who are contracted experts for the Department of Homeland Security's Office of Civil Rights and Civil Liberties said recently that COVID-19 presents an "imminent risk to the health and safety" of detainees in ICE detention centers, as well as the general public.[22]

A prominent group of Yale School of Medicine "medical professionals and experts in infectious disease and/or prison populations" wrote to Connecticut Supreme Court Associate Justice Andrew J. McDonald that "[t]he risk posed by infectious diseases in jails and prisons is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected." *See* Exhibit 3 at 1. This is because detainees "have much less of an opportunity to protect themselves by social distancing than they would in the community." The letter summarizes many of the other reasons that jails and prisons are ideal settings for the rapid transmission of infectious diseases, as well as their relatively limited ability to adequately treat the virus: "few state or federal prison systems have adequate (or any) pandemic preparedness plans in place." *Id.* at 5. This means that "individuals placed in Connecticut's prisons are at a significantly higher risk of infection with COVID-19 as compared to the population in the community and that they are at a significantly higher risk of harm if they do become infected."[23] *Id.* at 6. The urgency is clear, and the authors implored that "[t]he time to act is now," because "[o]nce a case of COVID-19 [is] identified in a facility, it will likely be too late to prevent a widespread outbreak." *Id.* at 5. The authors therefore

---

[21] *Releasing Inmates, Screening Staff: U.S. Jails and Prisons Rush to Limit Virus Risks* (March 22, 2020)*, at* https://nyti.ms/3dm1dfQ

[22] *Doctors warn of 'tinderbox scenario' if coronavirus spreads in ICE detention* (March 20, 2020), *at* https://www.cnn.com/2020/03/20/health/doctors-ice-detention-coronavirus/index.html

[23] There is no reason to believe that the situation at Wyatt is materially different than in Connecticut's prisons.

urged a reduction in the size of the state prison population. *Id.* at 6–7 ("[I]t is our strong opinion that individuals who can safely and appropriately remain in the community not be placed in Connecticut's prisons at this time."

The observations and recommendations contained in the letter from the Yale School of Medicine faculty apply equally to FCI Berlin in New Hampshire, where Mr. Page is incarcerated. As of March 30, there were 314 cases in New Hampshire. 54 new cases were reported there yesterday, the largest one-day increase in the state since the pandemic began. With this rapidly increasing number of confirmed cases in New Hampshire, it is a near certainty that COVID-19 will soon be inside FCI Berlin, if it is not there already. Indeed, news sources have reported that one staff member at FCI Berlin has tested positive for the virus.[24]

Conditions of confinement at FCI Berlin create an optimal environment for the transmission of contagious disease.[25] People who work in the facility leave and return daily; people deliver supplies to the facility daily. Public health experts are unanimous in their opinion that incarcerated individuals "are at special risk of infection, given their living situations" and "may also be less able to participate in proactive measures to keep themselves safe," and that "infection control is challenging in these settings."[26] Mr. Page is powerless to take the preventative self-care measures directed by the CDC. He cannot self-quarantine or partake in "social distancing." He is housed in a community dormitory environment, and there are also community spaces where inmates and prison staff gather. These high-

---

[24] *Federal Prison Staffer in Berlin Tests Positive for COVID-19*, Nashua Telegraph (Mar. 19, 2020), https://www.nashuatelegraph.com/news/nh-news-apwire/2020/03/19/federal-prison-staffer-in-berlin-tests-positive-for-covid-19/
[25] Joseph A. Bick, "Infection Control in Jails and Prisons," *Clinical Infectious Diseases* 45(8): 1047-1055 (2007), available at https://doi.org/10.1086/521910.
[26] "Achieving a Fair and Effective COVID-19 Response:  An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States" (March 2, 2020), at https://bit.ly/2W9V6oS.

density areas are precisely the kind of spaces that have caused the alarmingly high-spread rates of COVID-19 in New York City.[27] Hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission rates, is contraband in jails and prisons because of its alcohol content.[28] Correctional health experts worry that no matter what precautions are taken by crowded prisons, these facilities will become incubators for the COVID-19 disease.[29] In short, the time to act in Mr. Page's case is now, *before* the inevitable spread of the virus inside FCI Berlin.

Judges around the country have begun to release defendants in light of the extraordinary risk posed by the COVID-19 pandemic. *See e.g.*, *United States v. Fellela*, No. 3:19-CR-79-JAM, 2020 WL 1457877 (D. Conn. Mar. 20, 2020) (Meyer, J.); *Xochihua-James v. Barr*, No. 18-71460 (9th Cir. Mar. 23, 2020) (unpublished) (*sua sponte* releasing detainee from immigration detention "[I]n light of the rapidly escalating public health crisis"); *United States v. Grobman*, No. 18-cr-20989, Doc. #397 (S.D. Fla. Mar. 29, 2020) (releasing defendant convicted after trial of fraud scheme in light of "extraordinary situation of a medically-compromised detainee being housed at a detention center where it is difficult, if not impossible, for [the defendant] and others to practice the social distancing measures which government, public health and medical officials all advocate"); *United States v. Kennedy*, No. 5:18-cr-20315, Doc. #77 (Mar. 27, 2020) (post-plea presentence release of defendant whose pretrial release was revoked because "the COVID-19 pandemic constitutes an independent

---

[27] "White House Tells Travelers from New York to Isolate as City Cases Soar," *New York Times* (March 24, 2020), available at https://www.nytimes.com/2020/03/24/nyregion/coronavirus-new-york-update.html.

[28] Keri Blakinger and Beth Schwarzapfel, "How Can Prisons Contain Coronavirus When Purell is Contraband?*," *ABA Journal* (March 13, 2020), available at https://www.abajournal.com/news/article/when-purell-is-contraband-how-can-prisons-contain-coronavirus.

[29] Michael Kaste, "Prisons and Jails Worry About Becoming Coronavirus 'Incubators'," *NPR* (March 13, 2020), available at https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-about-becoming-coronavirus-incubators.

compelling reason" for temporary release and "is *necessary* for Defendant to prepare his pre-sentence defense"); *United States v. Powell*, No. 1:94-cr-316-ESH (Mar. 28, 2020) (granting unopposed motion for compassionate release in light of COVID-19); *United States v. Mclean,* No. 19-cr-380, (D.D.C. Mar. 28, 2020) ("As counsel for the Defendant candidly concedes, the facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community have not changed – with one exception. That one exception – COVID-19 – however, not only rebuts the statutory presumption of dangerousness, *see* 18 U.S.C. § 3142(e), but tilts the balance in favor of release."); *United States v. Michaels*, 8:16-cr-76-JVS, Minute Order, Doc. #1061 (C.D. Cal. Mar. 26, 2020) ("Michaels has demonstrated that the Covid-19 virus and its effects in California constitute 'another compelling reason'" justifying temporary release under § 3142(i)); *United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun and drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources," "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement"); *United States v. Harris*, No. 1:19-cr-356-RDM, 2020 WL 1482342, at *1 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions."); *United States v Garlock*, No. 18-CR-00418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) (citing "chaos" inside federal prisons in sua sponte extending time to self-surrender: "[b]y now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided"); *United States v. Perez*, No. 19 CR. 297-PAE, 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he

contract COVID-19"); *United States v. Stephens*, 2020 WL 1295155, \_\_F. Supp. 3d\_\_ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *In re Manrigue*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("The risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail."); *In re Request to Commute or Suspend County Jail Sentences*, Docket No. 084230 (N.J. Mar. 22, 2020) (releasing large class of defendants serving time in county jail "in light of the Public Health Emergency" caused by COVID-19); *see also United States v. Avenatti*, No. 8:19-cr-61 (C.D. Cal. Mar. 25, 2020) (*sua sponte* inviting defendant to move for reconsideration of a just-denied motion for release "[i]n light of the evolving nature of the Covid-19 pandemic"); *United States v. Matthaei*, No. 1:19-CV-00243-BLW, 2020 WL 1443227, at *1 (D. Idaho Mar. 16, 2020) (extending self-surrender date by 90 days in light of COVID-19); *United States v. Barkman*, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) (suspending intermittent confinement because "[t]here is a pandemic that poses a direct risk if Mr. Barkman . . . is admitted to the inmate population of the Wahoe County Detention Facility"); *United States v. Copeland,* No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting compassionate release to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic"); *Basank v. Decker*, No. 20-cv-2518, (S.D.N.Y. Mar. 26, 2020) ("[t]he nature of detention facilities makes exposure and spread of the [coronavirus] particularly harmful" so granting TRO and releasing high-risk plaintiffs); *Coronel v. Decker*, 20-cv-2472-AJN, Doc. #26 (Mar. 27, 2020) (granting TRO and releasing from immigration detention facility in light of COVID-19); *Basank v. Decker*, 20-cv-2518 (S.D.N.Y. Mar. 26, 2020) (same).

**CONCLUSION**

In light of the COVID-19 pandemic, and for all of the reasons stated in his previous filings in support of his First Step Act motion, Mr. Page requests that the Court reduce his sentence to time served based on the record, in which case he would waive any hearing.[30] In the alternative, if the Court is not prepared to reduce his sentence to time served, he requests that the Court provide him with the opportunity for a video or telephonic hearing as soon as possible. If resentenced to time served, Mr. Page would have no objection to serving a period of his supervised release on home incarceration (at the home of Malissa Hurry) if deemed appropriate by the Court.

<div style="margin-left:50%">

Respectfully submitted,

THE DEFENDANT,
Anthony Page

OFFICE OF THE FEDERAL DEFENDER

</div>

Dated: March 31, 2020
<div style="margin-left:50%">

 */s/ Carly Levenson*
Carly Levenson
Assistant Federal Defender
265 Church Street, Suite 702
New Haven, CT 06510
Bar No.: phv09665
Phone: 203-498-4200
Fax: 203-498-4207
Email: Carly_Levenson@fd.org

</div>

---

[30] Judges in this District have granted First Step Act motions without a hearing. *See, e.g.*, *United States v. Telfus Durrant*, 3:06-cr-186-MPS, Doc. #61 (April 15, 2019); *United States v. Leonard Jones*, 3:99-cr-264-VAB, Doc. #2625 (Dec. 19, 2019); *United States v. Lancelot Hodge*, 3:06-cr-172-AVC, Doc. #104 (Aug. 12, 2019).

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 31, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Carly Levenson*
Carly Levenson