UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES                    :
                                 :
v.                               :    Case No. 3:08-cr-168 (RNC)
                                 :
ANTHONY PAGE                     :


RULING AND ORDER

Pending is the defendant's motion pursuant to section 404
of the First Step Act, Pub. L. No. 115-391, § 404, 132 Stat.
5194, 5222 (2018), for a reduction in his sentence of 210
months' imprisonment and eight years' supervised release.  The
defendant has served approximately 140 months, or two-thirds of
his sentence.  He seeks immediate release relying primarily on
his age (he is now 42) and release plan (which includes living
with a longtime friend and working for a relative).  The
Government opposes any reduction in the sentence.  The
Government contends that the defendant's conviction for
conspiracy to distribute crack cocaine is not a "covered
offense" under section 404, and he is therefore ineligible for a
sentence reduction, because the penalties that can be imposed on
the defendant for this offense have not changed since the
original sentencing.  In addition, the Government contends that
concurrent 210-month sentences the defendant received for non-
covered offenses preclude a reduction in the overall sentence.
I conclude that the defendant is eligible for a reduction in his

1

sentence and that the time he has been in custody is sufficient
to serve the sentencing purposes as set forth in 18 U.S.C. §
3553(a).  I also conclude that section 404 authorizes a
reduction in the term of supervised release and that such a
reduction is warranted.  Accordingly, the motion is granted, the
sentence of imprisonment is reduced to time-served, and the term
of supervised release is reduced to six years with new special
conditions, including a requirement that the defendant serve
six-months of home confinement as a substitute for
incarceration.

I.    Background

        In 2009, the defendant was found guilty by jury verdict of
participating in a conspiracy to possess with intent to
distribute and to distribute five grams or more of cocaine base
in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846
(count two); conspiracy to possess heroin with intent to
distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C)
and 846 (count four); possession with intent to distribute
heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)
(count five); and unlawful possession of a firearm in violation
of 18 U.S.C. §§ 922(g)(1) and 924(e) (count six).  ECF No. 114
at 1; ECF No. 165 at 1.  An information was filed pursuant to 21
U.S.C. § 851.  ECF No. 75.  As a result, count two carried a
mandatory minimum term of ten years and a maximum term of life

imprisonment, and a mandatory minimum of eight years of supervised release.  See 21 U.S.C. § 841(b)(1)(B)(iii) (2009). Counts four and five each carried a maximum sentence of thirty years' imprisonment and a mandatory minimum of six years of supervised release.  Id. § 841(b)(1)(C) (2009).

At the sentencing hearing, the presentence investigation report ("PSR") was adopted without change.  All the counts were grouped for the purpose of determining the base offense level. The PSR stated that the defendant was responsible for 62.35 grams of crack cocaine and 2.14 grams of heroin (equating to 1,275.2 kilograms of marijuana) and that he was a career offender pursuant to U.S.S.G. § 4B1.1(a).  Because the maximum penalty applicable to count two – the crack cocaine conspiracy count – was life imprisonment, the career offender guideline increased the offense level from 34 to 37.  See U.S.S.G. § 4B1.1(b)(A).  The defendant's criminal history category ("CHC") was VI, both because of the career offender guideline, and because he had a total of fifteen criminal history points.  ECF No. 173-2 at 12; U.S.S.G. § 4B1.1(b), ch. 5 Pt. A.  An offense level of 37 and a CHC of VI produced a guideline range of 360 months to life in prison.  See U.S.S.G. ch. 5 Pt. A.

At the sentencing hearing, the defendant requested the mandatory minimum prison sentence of 120 months.  The Government sought a downward departure from 360 to 262 months, citing the

crack-to-powder cocaine sentencing disparity that partly drove the guideline range. I ultimately determined that a sentence considerably longer than the mandatory minimum 120 months, but also well below 262 months, would be sufficient to reflect the seriousness of the defendant's crimes, afford adequate deterrence to criminal conduct, protect the public against criminal conduct by the defendant, and avoid unwarranted disparity in sentencing. Accordingly, the defendant received a sentence of imprisonment of 210 months on counts two, four, and five, and a sentence of 120 months on count six, all to run concurrently. In addition, he received a mandatory minimum eight-year term of supervised release on count two, six-year terms on counts four and five, and a three-year term on count six, all to run concurrently.

The judgment was affirmed on appeal. See United States v. Page, 657 F.3d 126 (2d Cir. 2011). A petition for certiorari was denied. See Page v. United States, 132 S. Ct. 1041 (2012).

II. Discussion

A. The Defendant is Eligible For Relief

Under section 404 of the First Step Act, "[a] court that imposed a sentence for a covered offense may, on motion of the defendant, . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." § 404(b), 132 Stat. at

5222.  "[T]he term 'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010," and which was committed before the Fair Sentencing Act was enacted.  Id. § 404(a).  Defendant argues that he is eligible for relief under section 404 because count two is a "covered offense."  I agree.

Count two charged the defendant with participating in a conspiracy to possess with intent to distribute and to distribute five grams or more of crack cocaine.  When the defendant was sentenced, this offense was punishable by between ten years and life in prison with a repeat offender enhancement.  See 21 U.S.C. § 841(b)(1)(B) (2009).  The Fair Sentencing Act increased from five to 28 grams the amount of crack cocaine required to trigger the penalties imposed by 21 U.S.C. § 841(b)(1)(B).  Pub. L. 111-220, § 2, 124 Stat. 2372, 2372 (2010) (codified at 21 U.S.C. § 841(b)(1)(B)(iii)).  As a result, today the penalty for count two would be found in 21 U.S.C. § 841(b)(1)(C), which applies when an offense involves less than 28 grams or an unspecified quantity of crack cocaine.  Under this provision, a defendant can be sentenced to a term of imprisonment of not more than 30 years with a repeat offender enhancement.

The Government contends that count two is not a "covered offense" within the meaning of section 404(a) because the quantity involved in the crack cocaine conspiracy - 62.35 grams - is greater than the 28 grams needed to trigger 21 U.S.C. § 841(b)(1)(B) today. I have previously ruled that it is the quantity of crack cocaine specified in the charging document, rather than the amount found by a preponderance of the evidence at sentencing, that controls whether an offense is a "covered offense" under section 404. United States v. Allen, 384 F. Supp. 3d 238, 241 (D. Conn. 2019) (emphasis added), appeal docketed, No. 19-874 (2d Cir. Apr. 5, 2019)). I adhere to that ruling, which is consistent with the text and purpose of the First Step Act, as recognized by the majority of district courts that have considered the question. See United States v. White, 413 F. Supp. 3d 15, 32-38 (D.D.C. 2019); United States v. Rose, 379 F. Supp. 3d 223, 230 (S.D.N.Y. 2019) (noting that "[t]he government's position is contrary to the clear weight of persuasive authority, both within and outside the Second Circuit" and collecting cases)

The Government contends that the 210-month concurrent sentences the defendant received on counts four and five preclude a reduction of his sentence on the ground that only "covered offenses" are eligible for a sentence reduction. I disagree. Section 404 states: "A court that imposed a sentence

for a covered offense may, on motion of the defendant, . . .
impose a reduced sentence . . . ." § 404(b), 132 Stat. at 5222.
Under the statute's plain language, if a defendant was sentenced
for a "covered offense," his or her sentence may be reduced.  To
the extent the statutory language is ambiguous, the ambiguity
must be resolved in favor of the defendant in order to further
the remedial purposes of the First Step Act.  See United States
v. Simons, 375 F. Supp. 3d 379, 382 (E.D.N.Y. 2019) ("Both [the
Fair Sentencing Act and the First Step Act] favor sending fewer
people to prison, imposing shorter sentences for drug crimes,
and reducing the sentencing disparity between crack and powder
cocaine offenses.").[1]

The Government's interpretation of section 404 would
preclude relief in any case in which the defendant received a
not-yet-completed concurrent sentence for a non-covered offense,
even though the length of that sentence was derived, in part,

---

[1] The Government cites three cases from within the Second Circuit
for the principle that only "covered offenses" are eligible for
a sentence reduction.  But these cases hold simply that only
defendants convicted of "covered offenses" may receive a
sentence reduction.  See United States v. Hunter, No. 3:05-cr-54
(JBA), 2019 WL 122031, at *2 (D. Conn. Mar. 15, 2019); United
States v. Powell, 360 F. Supp. 3d 134, 138 (N.D.N.Y. Mar. 14,
2019 2019); United States v. Davis, No. 07-cr-245S(1), 2019 WL
1054554, at *3 (W.D.N.Y. Mar. 6, 2019).  But see United States
v. Coleman, 382 F. Supp. 3d 851, 857 (E.D. Wis. 2019) (reading
section 404 to grant "discretion to reduce the defendant's
sentence on the *covered offense*" (emphasis in original)).

from the length of the sentence for a covered offense.[2]  Indeed,

that is the situation presented here.  As explained above, the

maximum penalty on count two with the repeat offender

enhancement - life imprisonment – served to enhance the offense

level applicable to all the drug counts from 34 to 37, due to

the operation of the career offender guideline.  In other words,

had "sections 2 and 3 of the Fair Sentencing Act . . . [been] in

effect at the time the covered offense was committed," the

defendant's offense level would have been lower than it was at

the time he was sentenced.  See § 404(b), 132 Stat. at 5222.

That the defendant was sentenced to concurrent sentences of 210

months for both covered and non-covered offenses therefore does

not preclude a sentence reduction under section 404 even under

the strictest reading of its language.  See United States v.

Jones, No. 99-cr-264 (VAB), ECF No. 2558 (D. Conn. Aug. 27,

2019) (reducing sentence on non-covered offenses); United States

---

[2] In other cases, the Government seems to have conceded that a
court may reduce sentences resulting from non-covered offenses.
See, e.g., Williams, 2019 WL 3251520, at *2 ("The government
. . . contends 'if a defendant received a sentence for a crack
offense that is concurrent to sentences imposed for non-crack
offenses, the court may impose a new sentence that has the
effect of reducing the terms of imprisonment for the non-crack
offenses.'").  See also United States v. Cyrus, No. 4:99-221-
CMC, 2019 WL 4267517, at *3 (D.S.C. Sept. 10, 2019) ("The
Government further concedes the court has the discretion to
impose a reduced sentence that has the effect of reducing
Defendant's sentence on a non-covered offense . . . .");  United
States v. Anderson, No. 0:04-353 (CMC), 2019 WL 4440088, at *4
(D.S.C. Sept. 17, 2019) (same).

v. Adams, No. 3:04-cr-00236-SRU, ECF No. 77 at *4-*6 (D. Conn.
Aug. 20, 2019) (same); White, 413 F. Supp. 3d at 48 ("[A]
reduction would be available on the non-covered offense, because
had FSA's section 2 been in effect at the time the covered
offense was committed, the defendant's sentencing range under
the Guidelines Manual would have been different for the non-
covered offense, a direct result of FSA's section 2."); United
States v. Walker, No. 3:99-cr-00264-VAB-19 (D. Conn. July 26,
2019), ECF No. 2451 at 13, 43-44 (concluding that section 404
permitted reduction of concurrent sentences on crack cocaine and
racketeering offenses that had been grouped together for
purposes of calculating the guideline range); United States v.
Williams, No. 3:02-548-003-CMC, 2019 WL 3251520 (D.S.C. July 19,
2019) (reducing sentence on non-covered offenses); United States
v. Biggs, No. 05 CR 316, 2019 WL 2120226 (N.D. Ill. May 15,
2019) (same).

    B.  A Reduction in the Defendant's Sentence is Warranted

    Giving the defendant the benefit of the Fair Sentencing
Act, his crack cocaine conviction carries a maximum statutory
penalty of 30 years with the repeat offender enhancement.  Under
the career offender guideline, the adjusted offense level is 34
rather than 37.  And the guideline range is 262-327 months,
rather than 360 months to life.  But for the career offender
guideline, the range would be 140-175 months, and if the one-to-

one ratio were used to eliminate the disparity in the
Guidelines' treatment of crack and powder cocaine (as is often
done in this District), the range would be 57-71 months.

A reduction in the sentence is warranted under the First
Step Act in view of the wide difference between the range that
applied at the time of the original sentencing – 360 months to
life – and the range that applies under the Fair Sentencing Act
– 262 to 327 months.  As discussed above, the Government sought
a downward departure from the range (due to the disparity in the
Guidelines' treatment of crack and powder cocaine), I agreed the
range was clearly excessive, and the sentence of 210 months is
well below the bottom of that range.  Even so, I cannot exclude
the possibility that my awareness of the range of 360 months to
life had some impact on the analysis of the sentencing factors
that resulted in the sentence of 210 months, especially the need
to impose just punishment and avoid unwarranted sentencing
disparity.  Had the range been 262-327, a sentence comparably
below the bottom of the range would have been approximately 156
months.  As noted at the outset, the defendant has now served
140 months.

In sentencing the defendant to 210 months, I determined
that a lesser sentence would be insufficient to provide just
punishment, adequate deterrence, and protection of the public.
Based on the information presented to me concerning the

defendant's history and characteristics, I concluded that he
presented a high risk of returning to drug trafficking, which
underscored the need for a lengthy sentence. Today, the
defendant's risk of recidivism is substantially reduced because
he has been in custody for almost twelve years and is now 42. A
reduction in the sentence is therefore necessary in order to
comply with the parsimony principle, which prohibits a longer
term of imprisonment than necessary to serve the purposes of a
criminal sentence.

1.  A Sentence of Time-Served Is Warranted

The extent of the reduction that should be granted under
the First Step Act is determined by considering the sentencing
factors in 18 U.S.C. § 3553(a).[3] After considering the
defendant's personal history and characteristics, his recent
letter to me, his age, his family circumstances and his release
plan, I conclude that keeping him in prison is no longer
necessary to impose just punishment, provide adequate deterrence
or protect the public. I also conclude that reducing the

---

[3] The parties disagree about whether a plenary resentencing is
available under section 404. It is unnecessary to decide which
side is correct because in this case the defendant's sentence
can be reduced to time-served without a plenary resentencing.
See, e.g., United States v. Simons, 375 F. Supp. 3d 379, 388-89
(E.D.N.Y. 2019)(applying § 3553(a) sentencing factors in ruling
on First Step Act motion without plenary resentencing); United
States v. Crews, --- F. Supp. 3d ---, 2019 WL 2248650, at *6
(W.D. Pa. 2019)(same).

sentence to time-served will avoid unwarranted disparity in sentencing.  The defendant is a career offender due to offenses committed when he was young.  As mentioned above, but for the career offender guideline, his range would be 140-175 months (or 57-71 months applying the one-to-one ratio for crack and powder cocaine).

    2.  Reducing the Supervised Release Term Is Warranted

    The defendant also moves for a reduction of the eight-year term of supervised release imposed on count two, the mandatory minimum under the statute of conviction at the time.  See 21 U.S.C. § 841(b)(1)(B) (2009).  As modified by the Fair Sentencing Act, the mandatory minimum supervised release term for count two is six years with a second offender enhancement. See 21 U.S.C. § 841(b)(1)(C).  On the merits, I have no reluctance to reduce the term of supervised release from eight years to six.  If anything, a six-year term of supervised release may prove to be too long.

    Whether I am authorized to reduce the defendant's term of supervised release is another matter.  Many courts have reduced terms of supervised release pursuant to motions under the First Step Act without extensive discussion.  See, e.g., United States v. Thompson, No. 2:98-cr-53(3), 2019 WL 3938774, at *3 (E.D. Tenn. Aug. 20, 2019) ("The Court sees no reason in the present case why application of the Fair Sentencing Act would justify a

reduction the defendant's term of imprisonment but not a reduction in his term of supervised release."); United States v. Warren, No. 02-248(1) (DWF/SRN), 2019 WL 3059869 (D. Minn. July 12, 2019) (reducing from ten to eight years defendant's term of supervised release); Simons, 375 F. Supp. 3d at 389 (reducing from five to four years defendant's concurrent terms of supervised release without discussion). However, at least one court has held that such authority is lacking. See, e.g., United States v. Razz, 387 F. Supp. 3d 1397, 1407 (S.D. Fla. 2019). The opinion in Razz emerged from reasoning endorsed by the Ninth Circuit and the Southern District of New York. See United States v. Island, 336 Fed. App'x 759 (9th Cir. 2009); United States v. Garcia, No. 04-cr-218 (RMB), 2016 WL 4097844, at *2 (S.D.N.Y. July 25, 2016). See also United States v. Edwards, No. 8:96-cr-332-T-27MAP, 2019 WL 3858171, at *2 n.4, *3 (expressing uncertainty about authority to reduce a term of supervised release, but imposing a new term of supervised release after reducing defendant's life sentence pursuant to the First Step Act) (M.D. Fla. Aug. 16, 2019), appeal docketed, No. 19-13366 (11th Cir. Aug. 30, 2019).

In Razz, the Court emphasized that § 3852(c)(1)(B) only authorizes a court to "modify an imposed term of imprisonment" to the extent permitted by the relevant statute. See Razz, 387 F. Supp. 3d at 1407. The Court reasoned

> [b]ecause Section 3582(c)(1)(B) narrowly limits a
> district court's authority to modifying a "term of
> imprisonment" after it has been imposed, and because the
> phrase "term of imprisonment" does not encompass a "term
> of supervised release," the Court is not authorized to
> reduce Defendant's term of supervised release.

Id. (internal citations omitted).

I agree that authority to reduce the defendant's term of supervised release cannot be found outside the First Step Act. In United States v. Johnson, the Supreme Court declined a prisoner's request that his more than two years of "overincarceration" be applied to reduce his three-year supervised release term. Id. The Court unanimously held that the judiciary was precluded from doing so by the plain text of the supervised release statute, 18 U.S.C. § 3624(e). Id. at 60. The Court recognized that Mr. Johnson's claim for relief was supported by "equitable considerations of great weight," so it sought to identify potential avenues for relief that could be pursued upon remand. It noted that the trial court "may modify an individual's conditions of supervised release" or "may terminate" the supervised release after the expiration of one year, both under § 3583(e), which governs the modification of terms of supervised release. Id. Notably absent was any indication that the district court possessed authority to

shorten the term of supervised release, other than early

termination pursuant to § 3583(e)(1).[4]

In this case, early termination is not available because the

defendant has yet to begin serving his term of supervised release.

The only other possible avenue for relief under the supervised

release statute is provided by subsection (2), which authorizes a

court to "modify, reduce or enlarge the conditions of supervised

release, at any time prior to the expiration or termination of the

term of supervised release." § 3583(e)(2). This, in turn, poses

a question of interpretation: whether the length of a term of

---

[4] Under § 3583(e), a court may:

> (1) terminate a term of supervised release and discharge
> the defendant released at any time after the expiration
> of one year of supervised release . . . if it is
> satisfied that such action is warranted by the conduct
> of the defendant released and the interest of justice;

> (2) extend a term of supervised release if less than the
> maximum authorized term was previously imposed, and may
> modify, reduce, or enlarge the conditions of supervised
> release, at any time prior to the expiration or
> termination of the term of supervised release . . .;

> (3) revoke a term of supervised release, and require the
> defendant to serve in prison all or part of the term of
> supervised release authorized by statute for the offense
> that resulted in such term of supervised release without
> credit for time previously served on postrelease
> supervision . . . ; or

> (4) order the defendant to remain at his place of
> residence during nonworking hours . . . except that an
> order under this paragraph may be imposed only as an
> alternative to incarceration.

supervised release is a "condition" of the term of supervised release.  I conclude that it is not for the following reasons.

First, section 3583 distinguishes between the length of a term of supervised release and the conditions of a term of supervised release at several points.  For example, section (c) requires the court to consider the § 3553 factors "in determining the length of the term and the conditions of supervised release."  § 3583(c).  See Bruesewitz v. Wyeth, 562 U.S. 223, 236 (2011) (noting that the use of the word "and" as a "coordinating junction" was to "link[] independent ideas").

Second, section (d) delineates the acceptable "[c]onditions of supervised release."  § 3583(d).  At no point does it mention length.  Rather, authorized lengths of supervised release are contained in section (b), as well as in other offense-specific statutes.  § 3583(b).  Section (b) states that the "authorized terms of supervised release are . . .," again implicitly differentiating between length or "term" and "condition." § 3583(b).

Third, subsection (e)(2) itself casts doubt on the proposition that a court's authority to "reduce . . . the conditions" of a term of supervised release includes authority to shorten the length of that term.  Subsection (e)(2) expressly contemplates two ways in which a term of supervised release may come to an end: "expiration or termination."  § 3583(e)(2).

Expiration is self-explanatory, and the procedures for termination are governed by subsection (e)(1).

Finally, interpreting § 3583(e)(2) to authorize a court to reduce the length of a term of supervised release would effectively erase subsection (e)(1). In § 3583(e)(1), Congress provided a mechanism for bringing a term of supervised release to an early end: the defendant must have served one year of the term; and the court must determine that early termination is "warranted by the conduct of the defendant released and in the interest of justice." Subsection (e)(2) contains neither requirement. Thus, if it authorizes a reduction in the length of a term of supervised release, it constitutes an end run around subsection (e)(1)'s procedural requirements. Accordingly, I conclude that 18 U.S.C. § 3583 does not authorize reducing the defendant's term of supervised release.[5]

---

[5] The Second Circuit has previously stated that § 3583(e)(2) empowers a court to "discharge the defendant from supervised release, to modify and make less demanding the conditions of release, or to reduce the length of the term of release." United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997) (emphasis added). Lussier was an appeal from the denial of a motion to amend a restitution order, and the Second Circuit agreed with the District Court that § 3583(e)(2) did not grant jurisdiction to entertain a challenge to the order. Id. at 33. The statement concerning a court's authority to reduce the length of a term of release was therefore dictum. See Baraket v. Holder, 632 F.3d 56, 59 (2d Cir. 2011) (noting that what "distinguishes holding from dictum" is "whether resolution of the question is necessary for the decision of the case"). Moreover, the statement in Lussier must be viewed in light of the Supreme Court's later discussion of § 3583(e)(2) in Johnson.

Returning to the First Step Act, I conclude that it authorizes a reduction in a term of supervised release.[6]  The First Step Act constitutes an authorization to "impose a reduced sentence."  A sentence is comprised of at least two parts: the term of imprisonment and the term of supervised release.  <u>See</u> 18 U.S.C. § 3583(a) ("The court, in imposing a sentence to a term of imprisonment . . . may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment . . . .").  The First Step Act therefore authorizes courts to reduce both a term of imprisonment and a term of supervised release.

In reaching this conclusion, one need not reject the conclusion in <u>Razz</u> that a court's power to modify a <u>term of imprisonment</u> is cabined by § 3852(c)(1)(B).  But it does not follow that § 3852(c)(1)(B), by failing to mention terms of supervised release, thereby prohibits a court from modifying them.  Section 3852(c)(1)(B) may cabin a court's power under

_____

There, as discussed above, the Court went beyond the question presented to it in order to suggest potential avenues for relief through § 3583(e).  Subsection (e)(2), the Court suggested, could be used to modify the <u>conditions</u> of release, and <u>after a year</u>, the defendant could use the procedure in (e)(1) to move for early termination.  529 U.S. at 60.  Because the Court was actively searching for relief within § 3583(e)(2), its description of the authority conferred by the statute presumably reflects all the authority that can be found there.

[6] The court in <u>Razz</u> did not consider this issue.

section 404 with respect to modifying a term of imprisonment because it expressly <u>prohibits</u> a court from modifying a term of imprisonment except in limited circumstances.  <u>See</u> § 3852(c) ("The court <u>may not</u> modify a term of imprisonment once it has been imposed except that . . . .") (emphasis added).  To prevent a conflict between the two laws, modification of a term of imprisonment under section 404 may have to fall within an exception contained in § 3852(c).  <u>See</u> <u>In re Nw. Airlines Corp.</u>, 349 B.R. 338, 373 (S.D.N.Y. 2006) ("It is the duty of this Court to harmonize these overlapping statutes to give effect to each one insofar as they are capable of co-existence and to preserve the sense and purpose of each, insofar as they are not manifestly incompatible.").  But § 3852(c)(1)(B), like much of the rest of the U.S. Code, has nothing to say about reducing the length of a term of supervised release.  Rather, modification of a term of supervised release is governed by § 3853(e).  Nothing in § 3853(e) authorizes the reduction of the length of a term of supervised release.  However, unlike § 3852(c), nothing in the statute expressly <u>prohibits</u> the reduction of a term of supervised release.

Accordingly, the two statutes can be construed together to permit a reduction in the length of a term of supervised release when appropriate under the First Step Act.  In other words, when a sentence includes a term of supervised release longer than the

term of supervised release the defendant would have received had sections 2 and 3 of the Fair Sentencing Act been in place at the time of the offense, the court may reduce the length of the term of supervised release in order to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act had been in place." § 404, 132 Stat. at 5222. This construction comports with the statutory text and the remedial purposes of the First Step Act and the Fair Sentencing Acts. See Simons, 375 F. Supp. 3d at 382.

III.    Conclusion

The defendant's motion is hereby granted, and the sentence is reduced as follows:

1.   The sentence of imprisonment on counts two, four and five is reduced to time-served;

2.   The term of supervised release on count two is reduced to six years, to run concurrently with the supervised release terms previously imposed on counts four and five (both 6 years) and count 6 (3 years);

3.   The mandatory, standard and special conditions of supervised release imposed by the original judgment are re-imposed; and

4.   The following new special conditions are added:

- The defendant will spend the first 6 months of his supervised release confined to his approved residence, as a

substitute for continued incarceration in the custody of the Bureau of Prisons.  The defendant will be able to leave his approved residence to work, participate in a program of education or vocational training under the direction of the Probation Office, obtain medical care, and at such other times as are approved in advance by the Probation Office.  To ensure compliance with this special condition, the defendant will be subject to monitoring as recommended by the Probation Office and approved by the Court;

- The defendant will work full-time unless engaged in a program of education or vocational training approved by the Probation Office.  And

- The defendant will submit to a search of his person, residence, vehicle and workplace, conducted by or on behalf of the Probation Office at a reasonable time and in a reasonable manner, based on reasonable suspicion that the search will disclose contraband or other evidence of a violation of a condition of his supervised release.

An amended judgment will be filed that reflects the above modifications.

So ordered this 8th day of April 2020.

/s/ RNC
Robert N. Chatigny
United States District Judge

21