UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | NO. 3:08-CR-168 (RNC) |
| ANTHONY PAGE | : | February 22, 2022 |

**MOTION FOR REVIEW OF MAGISTRATE'S ORDER REVOKING RELEASE**

Mr. Anthony Page seeks review of a detention order entered on December 14, 2021, and upheld on January 31, 2022, by United States Magistrate Judge Thomas O. Farrish. Mr. Page had previously been released by then-Magistrate Judge Sarah Merriam on July 19, 2021, following his arrest on a warrant alleging a violation of his supervised release. Magistrate Judge Farrish revoked Mr. Page's bond on December 14, 2021, and affirmed his detention on January 31, 2022, under 18 U.S.C. § 3148(b).

Mr. Page now requests that this Court hold a *de novo* hearing on the issue of bail, pursuant to 18 U.S.C. § 3145(b). Under the conditions proposed by the defense, Mr. Page poses neither a flight risk nor a danger, and Mr. Page is prepared to comply with the proposed conditions, as well as with any additional conditions that the Court deems necessary.

**BACKGROUND**

In 2009, a jury found Mr. Page guilty of one count of conspiracy to possess with intent to distribute and to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B); one count of conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C); one count of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and one count of felon in

possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). In 2010, the Court sentenced him to 210 months of imprisonment, followed by 8 years of supervised release.

On February 25, 2019, Mr. Page filed a motion for immediate release or resentencing under Section 404 of the First Step Act. In his briefing in support of his First Step Act motion, Mr. Page noted that, if sentenced today, he would no longer be subject to any mandatory minimum sentence and would be subject to a lower Guidelines range than at the time of the original sentencing, including a "one-to-one" Guidelines range of 57 to 71 months. Docs. #175, #179, #186.

On April 8, 2020, the Court granted Mr. Page's First Step Act motion. The Court reduced his term of imprisonment from 210 months to time served (approximately 140 months) and his term of supervised release from 8 years to 6 years. The Court also imposed three new special conditions of supervised release, including a condition of location monitoring with home detention for six months. He successfully completed his six months of home detention and location monitoring in October 2020.

Mr. Page was released in the midst of a global pandemic after almost 12 years in prison. Despite having no history of formal, on-the-books employment prior to his incarceration, *see* PSR ¶ 67, he was able to obtain and maintain employment while on supervised release, including a full-time job at Walmart, which he had held for over 6 months at the time of his arrest. Doc. #199 at 4. In addition to working, Mr. Page was a student at the time of his arrest. For over a year, he was enrolled in and attending the Collision Repair vocational program at Lincoln Tech, which met 4 days a week, from 8:30 am to 12:30 pm. According to Probation, "Up until his arrest in this matter, he had attended all required sessions." *Id.* at 3.

Upon his release from prison, Mr. Page initially resided with a friend. With Probation's permission, he later moved in with his girlfriend. On June 12, 2021, Mr. Page was allegedly involved in a domestic dispute with his girlfriend, which led to the police being called, and ultimately led to

his arrest. Following his arrest, Mr. Page promptly contacted his Probation Officer to let her know about the police contact and arrest. He initially bonded out of state custody and was given a state court date of June 14, 2021. He reported to court on June 14. On that date, he re-entered state custody.

On June 15, 2021, the Probation Office filed a petition for a warrant for an alleged violation of supervised release, based on the state arrest. The warrant was lodged as a detainer. On July 6, 2021, the Probation Office filed a violation report. Doc. #199. On the same date, the government filed a motion for detention. Doc. #200.

On July 16, 2021, Mr. Page filed a motion for release from custody. Doc. #204. On July 19, 2021, then-Magistrate Judge Sarah A. L. Merriam held a hearing and granted Mr. Page's release, subject to conditions, including that he reside at a halfway house until December 6, 2021, and be subject to GPS monitoring.

While at the halfway house in Bloomfield, Mr. Page obtained and maintained full-time employment at ProPark in Hartford. He also completed anger management treatment at CRT. He resumed his prior efforts to obtain custody of his son, who is in DCF custody, including having his son visit him regularly at the halfway house. He also continued to attend his state court dates in Norwich as required.

On December 3, 2021, Magistrate Judge Farrish[1] granted Mr. Page's motion to transition from the halfway house to the home of a friend, Charlise Green, in Jewett City on December 6, 2021. Doc. #227. Mr. Page made that transition as planned on December 6, 2021. On December 7, 2021, the day after he left the halfway house, Mr. Page filed a motion—which defense counsel discussed with Probation and Probation did not oppose—requesting that the Court remove the home detention and

---

[1] Magistrate Judge Merriam, who had previously handled the issues related to Mr. Page's bond, was sworn in as a U.S. District Judge in October 2021.

location monitoring conditions, because those conditions were making it difficult for Mr. Page to succeed in the community and were also extremely burdensome to the Probation Office. Doc. #228.

On December 9, 2021, the Probation Office filed a Petition for Action on Conditions of Pretrial Release, listing a number of unauthorized stops made by Mr. Page on December 6, 7, and 8, 2021, following his discharge from the halfway house. Doc. #230. After the filing of that report, the Court denied Mr. Page's pending motion to modify his conditions.

On December 14, 2021, Magistrate Judge Farrish held a hearing to address the violations alleged in Probation's petition. At the hearing, Magistrate Judge Farrish found that Mr. Page had violated a condition of release and that he was unlikely to abide by any combination of conditions that the Court might set. Doc. #235. Magistrate Judge Farrish then revoked Mr. Page's release pursuant to 18 U.S.C. § 3148(b), and Mr. Page was taken into federal custody and brought to Wyatt Detention Center.

Although Mr. Page had a state court date in Norwich scheduled for the next day, December 15, 2021, he was not transported to state court on that date. In his absence, the state court set his next court date for March 1, 2022. It remains unknown whether he will be transported to state court on March 1. Undersigned counsel has made efforts, and is continuing to make efforts, to ensure that Mr. Page is transported to state court, but ultimately whether this happens is up to the state prosecutor, state judicial marshals, and U.S. Marshals.

Shortly after Mr. Page arrived at Wyatt, the Omicron variant led to an unprecedented outbreak in COVID-19 cases there. At the time that Mr. Page filed his most recent motion for release before Magistrate Judge Farrish, over 200 inmates and over 50 staff members were infected with the virus. The facility was on partial lockdown, with all programming suspended. Numbers have since

decreased somewhat at Wyatt but remain high; the last update from Wyatt indicated that 46 inmates had active infections.

Mr. Page had not yet received the COVID-19 vaccine prior to Magistrate Judge Farrish revoking his bond, but amidst the outbreak at Wyatt, he requested to receive the vaccine. He was told that he could not receive the vaccine at that time. On January 8, 2022, undersigned counsel reached out to medical staff at Wyatt to request that Mr. Page receive the vaccine. On January 9, 2022, Wyatt staff responded to undersigned counsel that there was not adequate staffing available to administer the vaccine to Mr. Page.

On January 20, 2022, undersigned counsel filed a motion for a bond hearing for Mr. Page, requesting that he be released to his friend's home in Jewett City, subject to any conditions the Court wished to impose, up to home incarceration. Doc. #238 at 6. In that motion, counsel noted concerns related to the unprecedented COVD-19 outbreak at Wyatt; the fact that Mr. Page had not been vaccinated despite his requests;[2] and that Mr. Page needed to get to state court to resolve his state case in order for his federal violation hearing to move forward, but that he feared he would not be brought to state court from Wyatt. *Id.* at 4–6.

This Court referred the motion to Magistrate Judge Farrish, Doc. #239, and on January 30, 2022, Magistrate Judge Farrish held a hearing on the motion by Zoom videoconference. At the hearing, undersigned counsel noted that in addition to seeking release under Federal Rule of Criminal Procedure 32.1 and 18 U.S.C. § 3143(a)(1), Mr. Page was seeking release in the alternative under 18 U.S.C. § 3142(i). After hearing argument from the parties, Magistrate Judge Farrish denied the motion for release, finding again under 18 U.S.C. § 3148(b) that Mr. Page had violated a condition

---

[2] Since the filing of the January 20 motion, Mr. Page finally received his first dose of the COVID-19 vaccine at Wyatt, roughly a month after requesting it.

5

of release, *see* § 3148(b)(1)(B), and that he was unlikely to abide by any condition or combination of conditions of release, *see* § 3148(b)(2)(B). Mr. Page remains incarcerated at Wyatt Detention Center.

## DISCUSSION

*Relevant Legal Standards*

Federal Rule of Criminal Procedure 32.1(a)(6) states that when a person is charged with violating supervised release, "the magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings." Fed. R. Crim. Pro. 32.1(a)(6). In turn, 18 U.S.C. § 3143(a)(1) provides for release only where "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." Rule 32.1(a)(6) further indicates that, in the supervised release violation context, "[t]he burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person."

> 18 U.S.C. § 3148(b), the statute governing revocation of release, states in full:
>
> (b) Revocation of Release.—The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section. To the extent practicable, a person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated. The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—
> > (1) finds that there is—
> > > (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
> > > (B) clear and convincing evidence that the person has violated any other condition of release; and
> > (2) finds that—

6

> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
> (B) the person is unlikely to abide by any condition or combination of conditions of release.

Another part of the Bail Reform Act, 18 U.S.C. § 3142(i), allows for temporary release "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense *or for another compelling reason*" (emphasis added). In essence, section 3142(i) provides a "safety valve" for courts to use in exceptional situations that the Bail Reform Act's usual scheme does not contemplate. It permits courts to take into account unexpected or aberrational situations and to balance these extraordinary circumstances against the everyday Bail Reform Act factors of flight risk and community safety.

Finally, "[i]f a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. 3145(b). "In reviewing a detention order of a Magistrate Judge pursuant to 18 U.S.C. § 3145(b), a District Judge should not simply defer to the judgment of the Magistrate Judge, but rather must reach his or her own independent conclusions. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). 'When making its *de novo* review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence.' *United States v. Marra,* 165 F. Supp. 2d 478, 481 (W.D.N.Y.2001)." *United States v. Parker*, 65 F. Supp. 3d 358, 362 (W.D.N.Y. 2014).

7

*Argument*

This Court should grant Mr. Page's release under Federal Rule of Criminal Procedure 32.1(a)(6) and 18 U.S.C. § 3143(a)(1), because under the proposed conditions, Mr. Page is not likely to flee or pose a danger to the safety of any other person or the community.

Magistrate Judge Farrish erred when he revoked Mr. Page's release under § 3148(b). Mr. Page does not dispute that he violated a condition of release when he stopped at locations that were not approved by his probation officer on his first three days out of the halfway house, as described in Probation's Petition. *See* Doc. #230. In other words, Mr. Page does not dispute that the first step of the two-step inquiry under § 3148(b) has been satisfied. Mr. Page respectfully disagrees, however, that the second step has been satisfied. The second step of the inquiry requires the Court to find either that "(A) based on the factors set forth in [18 U.S.C. § 3142(g)], there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release," before revoking the person's release. As the Second Circuit has noted, it is not clear whether these two paragraphs (A) and (B) are actually distinct from one another, because a finding that the defendant is a flight risk or danger will presumably support a finding that the person is unlikely to abide by conditions of release, and vice versa. *United States v. Gotti*, 794 F.2d 773, 776 n. 3 (2d Cir.1986) ("It is not clear whether there is a significant difference between the findings required by paragraphs (A) and (B) of subsection (2). For example, if the person on bail is, in the words of paragraph (2)(B) 'unlikely to abide by any condition' designed to keep him from fleeing, then presumably under paragraph (2)(A) 'there is no condition ... that will assure that the person will not flee. Conversely, if no condition will prevent flight, it would seem that the person, in the words of paragraph 2(B), is also 'unlikely to abide by any condition' meant to deter such

8

flight."). "In other words, despite the two separate factors that should be considered as part of the second step of the § 3148(b) analysis, the inquiry overlaps and arguably requires consideration of the same elements." *Parker*, 65 F. Supp. 3d at 363.

Magistrate Judge Farrish found Mr. Page is "unlikely to abide by any condition or combination of conditions of release," under § 3148(b)(2)(B). Specifically, in his December 14, 2021 docket ruling, he wrote that "[t]he Court also found that Mr. Page is unlikely to abide by any condition or combination of conditions of release that it might set, because (among other reasons) he has repeatedly violated conditions in the past, as evidenced by the four petitions that the Pretrial Services Office has filed." Doc. #235.

The "four petitions" to which Magistrate Farrish referred include the June 15, 2021 petition stemming from Mr. Page's state arrest that forms the basis for his alleged supervised release violation—a state case that remains pending, and in which he remains innocent until proven guilty—as well as the December 10, 2021 petition that brought Mr. Page before Judge Farrish on December 14, 2021. The other two petitions—from August 23, 2021 (Doc. #209) and September 2, 2021 (Doc. #212)—were considered by Magistrate Judge Merriam at the September 3, 2021 compliance hearing, at which Judge Merriam modified Mr. Page's conditions to home incarceration. Following that hearing with Judge Merriam, Mr. Page complied with his conditions of release, eventually seeking and obtaining permission from Judge Merriam to work full-time and to begin looking at apartments, *see* Doc. #216, #221. In other words, he demonstrated compliance with the extremely strict conditions set by Judge Merriam, and he sustained that compliance over a period of several months.

Magistrate Judge Farrish's finding that Mr. Page was "unlikely to abide by any conditions" was essentially based on his finding that Mr. Page had violated conditions. But the fact that someone violated the conditions in place (in other words, the first step of the § 3148(b) inquiry), does not lead

9

automatically to a conclusion that the person is unlikely to abide by any condition or combination of conditions that the Court might set (the second step of the inquiry). Whether the person violated their conditions is not what the second step of the § 3148(b) inquiry asks. Instead, as noted by the Second Circuit in *Gotti*, the second step of the inquiry is, at its core, about the twin concerns of the Bail Reform Act: flight risk and danger. And although Mr. Page has not had a perfect track record of compliance, he does not pose a flight risk nor a danger, and he has, by and large, complied with the conditions in place to safeguard against flight risk and danger, despite his rocky transition in his first three days after leaving the halfway house.

The record is clear that Mr. Page does not pose a flight risk. He has attended all state and federal court dates since his July arrest, including the compliance hearings before Judge Merriam and Judge Farrish. He was issued summonses for these hearings, rather than being arrested pursuant to warrant, and he voluntarily appeared—despite knowing that he could be taken into custody directly from court (which he was, on December 14).

As for danger, Mr. Page does not pose a danger to any other person or the community. He admits that he made unauthorized stops in his first three days after leaving the halfway house but there is no indication that these stops were connected to criminal activity or otherwise involved dangerous behavior. Mr. Page is in violation status because of charges stemming from an alleged domestic dispute in July 2021. He disagrees with the police report's account of that incident; the charges remain pending in state court. At the time, he was working and in school, and was not connected to any criminal activity. In other words, the only suggestion of dangerousness since Mr. Page's release from prison relates to the alleged domestic dispute. There is a state protective order in place that prohibits Mr. Page from having any contact with the complainant in that case. For the five months that he was on release while the state case was pending, both the state and federal courts were

10

monitoring his location through GPS. There has been no indication that he has had any contact with the complainant.

If Judge Farrish believed that Mr. Page could not be trusted to comply with home detention due to his behavior after leaving the halfway house, he had other options available to him besides revoking Mr. Page's release. For example, he could have put Mr. Page on complete home incarceration at Ms. Green's home, with permission *only* to leave for court dates or for medical emergencies. He did not even have to permit Mr. Page to work. The record does not support the conclusion that Mr. Page was unlikely to abide by any conditions at all. To the contrary, Mr. Page demonstrated over his five months at the halfway house that he is capable of abiding by strict conditions and rules. And even before the halfway house and his July 2021 state arrest, he showed that he was capable of abiding by the Court's conditions: he successfully completed six months of location monitoring and home detention (which the Court ordered when it granted his First Step Act motion and reduced his sentence) and was living successfully in the community, working at Wal-Mart, attending school at Lincoln Tech, and in short, living a positive, law-abiding life that would in many ways have been unrecognizable to his younger self. The transition to his friend's house in Jewett City in December 2021 was an adjustment after living in the strict environment of the halfway house for five months, and he did not handle the transition as he should have, but the record as a whole does not support the finding that he is unlikely to abide by any condition or combination of conditions.

Mr. Page requests the opportunity to appear before this Court for a *de novo* hearing on the question of his detention or release, and ultimately, he respectfully requests that the Court reinstate his release on whatever conditions are deemed necessary by the Court.

                                                Respectfully Submitted,

                                                THE DEFENDANT,
                                                Anthony Page

                                                FEDERAL DEFENDER OFFICE

Date: February 22, 2022                /s/ Carly Levenson
                                                Carly Levenson
                                                Assistant Federal Defender
                                                265 Church Street, Suite 702
                                                New Haven, CT 06510
                                                Phone: (203) 498-4200
                                                Bar No.: pvh09665
                                                Email: carly_levenson@fd.org

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on February 22, 2022, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                /s/ Carly Levenson
                                                Carly Levenson